*Decision will be entered under Rule 50.*

KIMBRELL'S HOME FURNISHINGS, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 8154. Promulgated July 11, 1946.

*W. H. Holderness, Esq.*, for the petitioner.
*E. M. Woolf, Esq.*, for the respondent.

OPINION.

HILL, *Judge*: Having come into existence after January 1, 1940, petitioner was required, in determining its excess profits tax liability for the fiscal year ended August 31, 1943, to compute its excess profits credit under section 714 of the Internal Revenue Code. This computation required an ascertainment of its equity invested capital, which, by section 718 (a), is defined as including the "accumulated earnings and profits as of the beginning of such taxable year.[1] Petitioner contends on two separate grounds that such accumulated earnings and profits include its reserve as of August 31, 1942, for unrealized profits on installment sales, in the amount of $18,394.04.

"Accumulated earnings and profits" is not defined in either chapter 1 or chapter 2 of the Internal Revenue Code, but in *Federal Union Insurance Co.*, 5 T. C. 374, we considered and approved the portion of section 35.718–2 of Regulations 112 which provides that "In general, the concept of 'accumulated earnings and profits' for the purpose of the excess profits tax is the same as for the purpose of the income tax." Section 115 of the code, dealing with corporate distributions and their income tax consequences, makes frequent reference to "earnings and profits" and prescribes the effect of certain corporate transactions thereon. Relative thereto the respondent has promulgated regulations which, in part, are as follows:

SEC. 29.115–3 [Regulations 111]. EARNINGS OR PROFITS.—In determining the amount of earnings or profits * * * due consideration must be given to the facts, and, while mere bookkeeping entries increasing or decreasing surplus will not be conclusive, the amount of the earnings or profits in any case will be dependent upon the method of accounting properly employed in computing net income. For instance, a corporation keeping its books and filing its income tax returns under sections 41, 42 and 43 on the cash receipts and disbursements basis may not use the accrual basis in determining earnings and profits; a corporation computing income on the installment basis as provided in section 44 shall, with respect to the installment transactions, compute earnings and profits on such basis; and an insurance company subject to taxation under section 204 shall exclude from earnings and profits that portion of any premium which is unearned

---

[1] SEC. 718. EQUITY INVESTED CAPITAL.

(a) DEFINITION.—The equity invested capital for any day of any taxable year shall be determined as of the beginning of such day and shall be the sum of the following amounts, reduced as provided in subsection (b)—

* * * * * * *

(4) EARNINGS AND PROFITS AT BEGINNING OF YEAR.—The accumulated earnings and profits as of the beginning of such taxable year.

under the provisions of section 204 (b) (5) and which is segregated accordingly in the unearned premium reserve.

Among the items entering into the computation of corporate earnings or profits for a particular period are all income exempted by statute, income not taxable by the Federal Government under the Constitution, as well as all items includible in gross income under section 22 (a) or corresponding provisions of prior Revenue Acts. Gains and losses within the purview of section 112 or corresponding provisions of prior Revenue Acts are brought into the earnings and profits at the time and to the extent such gains and losses are recognized under that section (see section 29.115–12). * * *

The scope of "earnings and profits" has been defined as sufficiently broad to encompass, in the absence of statutory exclusion, all economic gain realized by the corporation, and it has been held repeatedly that corporate profits are not necessarily limited to accumulations of surplus which prior thereto have been included in taxable income. It does not necessarily follow, however, that the respondent's regulation is incorrect in its general provision that the "amount of the earnings or profits in any case will be dependent upon the method of accounting properly employed in computing net income." Immediately following this general rule, three purported examples thereof are stated in the regulation. In *Federal Union Insurance Co.*, *supra*, we expressly approved the last of the three examples. We held there that reserves for unearned premiums are not includible in an insurance company's earnings or profits for excess profits tax purposes because "an item may not become a part of the accumulated earnings or profits for income tax purposes except by going through the income account."

Petitioner's position is directly in conflict with the second illustration, however, for this illustration provides that "a corporation computing income on the installment basis as provided in section 44 shall, with respect to the installment transactions, compute earnings and profits on such basis * * *." Petitioner's first argument is that under the established principles of accrual accounting it had realized as of the beginning of the taxable year 1943 the installment sales profits represented by its then "reserve for unrealized profits on installment sales." In support thereof, petitioner cites *Lawler* v. *Commissioner*, 78 Fed. (2d) 567; *Provident Trust Co. of Philadelphia* v. *Commissioner*, 76 Fed. (2d) 810; *Crane* v. *Helvering*, 76 Fed. (2d) 99; and *Nuckolls* v. *United States*, 76 Fed. (2d) 357. Relying upon *Commissioner* v. *Shenandoah Co.*, 138 Fed. (2d) 792, petitioner sees section 44 (a) as recognizing such realized gain as taxable income, but granting a privilege of deferring tax payment thereon. The argument concludes that the profits are therefore accumulated corporate earnings as of the taxable year 1943 for income tax and excess profits tax purposes, and that "the general principles of accrual accounting * * * are not changed by the fact that a special provision of the taxing statutes permits the postponement of the liability for income

taxes to a future year in respect to installment sales where the tax-payer so elects."

We think petitioner misconstrues the intent and effect of section 44 (a)[2] and that its first contention must be rejected. Petitioner does not keep its books on an accrual basis or on the cash basis, but uses the installment basis, a hybrid method of accounting which in petitioner's case is cash as to installment sales and accrual as to all other items. The use of this method was adopted by petitioner because it elected to report income under section 44 (a) and such method of accounting was necessary to reflect income in accordance therewith. In our view, section 44 (a), in providing for the use of the installment basis by dealers in personal property, establishes it as a method of accounting on the same plane as the accrual and cash bases. We think that petitioner's "earnings and profits," as used in section 718 (a) (4), must be construed in the light of this method of accounting. See *R. M. Weyerhaeuser*, 33 B. T. A. 594; *Federal Street & Pleasant Valley Passenger Ry. Co.*, 24 B. T. A. 262, 266. Cf. *Helvering* v. *Alworth Trust*, 136 Fed. (2d) 812; certiorari denied, 320 U. S. 784. But cf. *Estate of John H. Wheeler*, 1 T. C. 640, 652, appealed only as to other issues.

Aside from whether the denomination of the reserve as one for "unrealized profits" has any significance, it seems clear that under sound accounting practice these amounts have not properly gone through petitioner's income account so as to constitute earned surplus. Paton, Accountants' Handbook (2d Ed.), pp. 271, 1251. Under the conservative and, in our view, more sound rule of general corporation law, such "unrealized profits" do not constitute earnings subject to distribution as dividends. See discussion in Kehl, Corporate Dividends (1941) 108, and Fletcher Cyclopedia, Corporations, vol. 11, § 5341, and vol. 19, § 9032. No part of the installment obligations is any more realized as profits or any more valuable as a business asset than would be the case if petitioner kept its books on the cash basis, in which circumstance it apparently would not be contended that the amounts here involved would be includible in equity invested capital.

Uncollected installment profits of exactly the same nature as those here before us were consistently and repeatedly held not to be "paid-in or earned surplus and undivided profits," which by section 326 (a) (3) of the Revenue Act of 1918 were specifically includible in invested capital for the purpose of computing a corporation's liability for the

---

[2] SEC. 44. INSTALLMENT BASIS.

(a) DEALERS IN PERSONAL PROPERTY.—Under regulations prescribed by the Commissioner with the approval of the Secretary, a person who regularly sells or otherwise disposes of personal property on the installment plan may return as income therefrom in any taxable year that proportion of the installment payments actually received in that year which the gross profit realized or to be realized when payment is completed, bears to the total contract price.

war profits and excess profits tax imposed by that act. *Blum's, Inc.,* 7 B. T. A. 737, 771; *Green Furniture Co.,* 14 B. T. A. 508; and cases cited in *Federal Street & Pleasant Valley Passenger Ry. Co., supra,* at page 266. We know of no reason, and none has been advanced, for concluding that so far as we are concerned here the scope of the quoted section of the 1918 Act is less broad than the scope of "earnings and profits" under section 718 (a) (4) of the code. Petitioner suggests, however, that we reexamine the question, in view of the age of the decisions cited, the fact that most of them were expressly based upon the *Blum* case, *supra,* and the recent decision in the *Shenandoah* case. The reexamination has revealed to us no error in those decisions as to the issue here presented.

We find it unnecessary to consider the reasoning in *Commissioner* v. *Shenandoah Co., supra,* for we regard that case as distinguishable. It appears there that the total gain on the sale of each lot was realized at the time of sale and under either the cash or accrual basis would have been taxable in the year thereof but for the election under section 44 (b). Under that circumstance the use of the installment basis of reporting the gain might much more reasonably be argued to do no more than defer payment of the tax thereon. But cf. *Wallace Huntington,* 15 B. T. A. 851, 858. See 2 Mertens, Law of Federal Income Taxation, § 11.05.

Petitioner's second contention is grounded upon its election to compute its excess profits tax income under section 736 (a) of the Internal Revenue Code.[3] It is argued that the purpose of section 736 (a) is to grant relief to certain installment basis taxpayers by allowing them to

---

[3] SEC. 736. RELIEF FOR INSTALLMENT BASIS TAXPAYERS AND TAXPAYERS WITH INCOME FROM LONG-TERM CONTRACTS.

(a) ELECTION TO ACCRUE INCOME.—In the case of any taxpayer computing income from installment sales under the method provided by section 44 (a), if such taxpayer establishes, in accordance with regulations prescribed by the Commissioner with the approval of the Secretary, that the average volume of credit extended to purchasers on the installment plan in the four taxable years preceding the first taxable year beginning after December 31, 1941, was more than 125 per centum of the volume of such credit extended to such purchasers in the taxable year, or the average outstanding installment accounts receivable at the end of each of the four taxable years preceding the first taxable year beginning after December 31, 1941, was more than 125 per centum of the amount of such accounts receivable at the end of the taxable year, or if the taxpayer was not in existence for four previous taxable years, the taxable years during which the taxpayer was in existence, in either case including only such years for which the income was computed under the method provided in section 44(a), it may elect, in its return for the taxable year, for the purposes of the tax imposed by this subchapter, to compute, in accordance with regulations prescribed by the Commissioner with the approval of the Secretary, its income from installment sales on the basis of the taxable period for which such income is accrued, in lieu of the basis provided by section 44 (a). Except as hereinafter provided, such election shall be irrevocable when once made and shall apply also to all subsequent taxable years, and the income from installment sales for each taxable year before the first year with respect to which the election is made but beginning after December 31, 1939, shall be adjusted for the purposes of this subchapter to conform to such election. In making such adjustments, no amount shall be included in computing excess profits net income for any excess profits tax taxable year on account of installment sales made in taxable years beginning before January 1, 1940. * * *

report income for excess profits tax purposes on an accrual basis, and that a "gross injustice" would therefore be done if uncollected profits on installment sales which have been included in excess profits net income for years prior to the taxable year are not regarded as part of equity invested capital "just as [in the case of] any other accrual basis taxpayer."

This contention is in apparent conflict with the portion of section 35.736 (a)–2 of Regulations 112 which provides as follows:

&ast; &ast; &ast; If the taxpayer uses the excess profits credit based on invested capital pursuant to section 714, the determination of accumulated earnings and profits shall be made without regard to any adjustment resulting from election made under section 736 (a) and this section, except as such election is reflected in the amount of income tax or excess profits tax payable for taxable years beginning after December 31, 1939. &ast; &ast; &ast;

It is obvious that petitioner's election in the taxable year 1943 to take advantage of section 736 (a) may have effected a change in its net profit or loss for prior years, for its tax liability for such years was then recomputed on the basis of a different method of determining income. To this extent, the amount of petitioner's "accumulated earnings and profits" as of the beginning of the taxable year 1943 was altered by the election. We can see no basis, however, in the relief provision or in its legislative history for concluding that Congress intended an election under it to bring into accumulated earnings an item which prior thereto was not so includible.

The House of Representatives report [4] specifies the hardship sought to be alleviated, as follows:

#### RELIEF FOR INSTALLMENT-BASIS TAXPAYERS.

Your committee has amended existing law to grant relief to taxpayers reporting on the installment basis. Under the installment method of accounting, a large part of the income arising from installment sales is reported in the year in which the installment payments are received instead of in the year in which the sales are made. On the other hand, expenses relating to installment sales are deducted in the year in which the sales are made. Due to recent regulations of the Federal Reserve Board, increasing the size of down payments and shortening the payment period on installment contracts, and the shifting of certain concerns to war contracts, there is a bunching of income in the taxable year without the normal installment selling costs to reduce such income. To overcome this hardship, taxpayers who can establish that the average volume of credit extended to purchasers on the installment plan in the four preceding taxable years was more than 125 per cent of such credit extended to such purchasers in the taxable year, are permitted to elect to report their income from installment sales on the accrual basis with respect to installment sales made after December 31, 1939. &ast; &ast; &ast;

[4] House of Representatives Report No. 2333, 77th Cong., 1st sess., p. 26 (1942–2 C. B. 394). For a more full discussion, see page 150 of the report. See also Finance Committee Report No. 1631, 77th Cong., 2d sess., pp. 42 and 207 (1942–2 C. B. 539, 656).

It is thus clear that the purpose of section 736 (a) is to allow certain taxpayers to bring their taxable income from installment sales into earlier years so that selling expenses would reduce the excess profits net income. Petitioner has done this and has benefited substantially. But it now seeks to further reduce its adjusted excess profits net income by increasing the amount of adjustment for excess profits credit. We conclude that Congress did not authorize such additional relief in enacting section 736(a). Nor can we see any injustice in its failure to do so, and, if we did, we should, of course, be powerless to correct it.

We hold that petitioner's "reserve for unrealized profits" as of the beginning of its taxable year 1943 is not includible in its equity invested capital in computing its excess profits tax credit for that year.

Reviewed by the Court.

*Decision will be entered for the respondent.*