May, Stern and Company v. Commissioner.
May, Stern & Co. v. Commissioner
Docket No. 9595.
United States Tax Court
1946 Tax Ct. Memo LEXIS 81; 5 T.C.M. (CCH) 806; T.C.M. (RIA) 46223; September 17, 1946
Louis Caplan, Esq., 1124 Frick Bldg., Pittsburgh, Pa., for the petitioner. R. Bruce Jones, Esq., for the respondent. HARRON Memorandum Findings of Fact and Opinion HARRON, Judge: Respondent has determined deficiencies in income tax for the fiscal years ended January 31, 1941, 1942, 1943, and 1944, in the respective amounts of $1,069.28, $5,034.24, $619.20, and $1,454.65. Also, the respondent has determined that there is a deficiency in excess profits tax *82 for the fiscal year ended January 31, 1941, in the amount of $89,774.93. There are two questions presented for decision. The first question is whether, in the computation of excess profits net income under the provisions of section 736 (a) of the Internal Revenue Code, deductions should be allowed the petitioner for bad debts and repossession losses on uncollectible installment sales made prior to January 1, 1940. The second question is whether petitioner, which filed its income tax returns on the installment basis as provided in section 44 (a) of the Internal Revenue Code and which elected under section 736 (a) to compute its excess profits net income on the accrual basis, may include its reserve for unrealized profits on installment sales in its equity invested capital as "accumulated earnings and profits" within the meaning of section 718 (a) (4) of the Internal Revenue Code. Petitioner filed its return with the collector for the twenty-third district of Pennsylvania. The facts are stipulated and are so found; those pertinent being set forth in the findings of fact. Findings of Fact Petitioner is a corporation, *83 with its principal place of business in Pittsburgh, Pennsylvania. Petitioner keeps its books of account and reports its income on the basis of a fiscal year ending January 31. For the fiscal year ended January 31, 1941, and for many years prior thereto, petitioner was engaged in the business of buying and selling home furnishings to the retail trade and computed its income for income tax purposes on the installment basis under section 44 (a) of the Internal Revenue Code. For the taxable year ended January 31, 1943, petitioner elected, for excess profits tax purposes, to compute its income from installment sales on the accrual basis under section 736 (a) of the Internal Revenuecode. Consistent with its election and pursuant to the requirements of section 736 (a) of the Internal Revenue Code, petitioner filed amended income and excess profits tax returns for the taxable year ended January 31, 1941. The normal tax net income reported by the petitioner in its amended excess profits tax return for the taxable year ended January 31, 1941, computed on the accrual basis, was $399,744.90. The Commissioner determined the normal tax net income *84 to be $484,157.95, or a difference of $84,413.05, by disallowing deductions of bad debts in the amount of $7,861.14; repossession losses in the amount of $72,096.58; and State income tax in the amount of $4,455.33. The disallowance of $7,861.14 of bad debts represented accounts receivable determined to be worthless in the taxable year ended January 31, 1941, which arose from installment sales made in taxable years beginning prior to January 1, 1940. The repossession losses in the amount of $72,096.58, disallowed in determining normal tax net income, were losses incurred during the taxable year ended January 31, 1941, from installment sales made in taxable years beginning prior to January 1, 1940. These losses represented the difference between the balances due from customers on the purchase price of merchandise repossessed by petitioner because of customers' defaults and the value of the merchandise at the time of repossession. No reserves for bad debts or for losses on repossessions were set up on petitioner's books of account, nor were any such reserves set up by the respondent in making the disallowances of bad debts and repossession losses hereinabove referred to. The disallowance *85 of $4,455.33, State income taxes, is an adjustment resulting from the changes made in Federal income and excess profits tax liabilities by the Commissioner. Petitioner in its amended excess profits tax return for the taxable year ended January 31, 1941, claimed an excess profits credit of $304,094.29 based upon invested capital. The Commissioner determined the excess profits credit under the invested capital method to be $207,097.87, resulting in a difference of $96,996.42, in accordance with the following calculations: Per Amended
Per Statutory
Return
Notice
Difference
Equity invested capital at February 1, 1940
$3,939,768.94
$2,625,212.92
$1,314,556.02
Average addition during year
None
None
None
Average reduction during year
None
None
None
Average equity invested capital
$3,939,768.94
$2,625,212.92
$1,314,556.02
Average borrowed capital
80,191.25
80,191.25
None
Average invested capital
$4,019,960.19
$2,705,404.17
$1,314,556.02
Reduction on account of inadmissibles
218,781.51
116,680.78
(102,100.73)
Invested capital
$3,801,178.68
$2,588,723.39
$1,212,455.29
Excess profits credit 8%
$ 304,094.29
$ 207,097.87
$ 96,996.42
*86 The accumulated unrealized earnings and profits on installment sales at February 1, 1940, amounted to $1,297,745.79. These unrealized earnings and profits constituted that portion of petitioner's accounts receivable which represented petitioner's uncollected gross profits on the sales from which these accounts originated. The difference of $1,314,556.02 in equity invested capital at February 1, 1940, is attributable entirely to the accumulated unrealized earnings and profits at the beginning of the taxable year and is determined as follows: Unrealized profit on installment sales
$1,297,745.79
Adjustment of prior years' taxes, including Federal income taxes: Per revenue agent's report, surplus decreased
$9,080.66
($7,697.35 plus $1,608.92 plus $112.79 less $338.40)
Per amended return, surplus increased
7,729.57
16,810.23
Difference as above
$1,314,556.02
Opinion At the time of the submission of this case, three cases were pending in the Tax Court awaiting decision which involved the same questions as are in issue here. Those cases have been decided as follows: The Hecht Co., 7 T.C. 643; Mackin Corporation, 7 T.C. 648; *87 and Kimbrell's Home Furnishings, Inc., 7 T.C. 339. The first question presented is controlled by Mackin Corporation, supra, which was followed in the case of The Hecht Co., supra. Under the holdings of these cases petitioner is entitled to deduct for the fiscal year ended January 31, 1941, losses on account of bad debts and repossession loss from installment sales made in taxable years beginning prior to January 1, 1940, such losses having been determined to be worthless and having been incurred in the taxable year. The parties have stipulated that the total amount of the bad debt losses is $7,861.14, which we understand represents accounts receivable determined to be worthless, and they have stipulated that the amount of the repossession losses is $72,096.58, which is said to represent the differences between the balances due from customers on the purchase price of repossessed merchandise and the value of the merchandise at the time of the repossession. The stipulations and the record do not show what portion of the accounts receivable determined to be worthless and what portion of the so-called repossession losses represent unrealized *88 profits. Under the rule of the cases of The Hecht Company and Mackin Corporation, supra, the taxpayer is entitled to a deduction only for the unrecovered cost reflected in such accounts. (Note that in the case of Mackin Corporation the amounts of unrecovered costs of sales were stipulated.) Since the parties have been able to stipulate the facts, there will be no difficulty in their agreeing to the required adjustments in the amounts of the bad debt loss and repossession loss, so that the petitioner may receive deductions in such amounts as it is entitled for both types of losses under this issue, under the rule of the case of Mackin Corporation. See The Hecht Co., supra, where the parties were allowed to make further stipulations upon the amount of the unrecovered cost of the goods involved in the accounts charged off, to be given effect in the Rule 50 recomputation. Recomputation under Rule 50 is necessary in this case to give effect to some items the parties have agreed upon, and because of the holding under Issue 2. The parties can take care of the further adjustments under this Issue in the recomputation. The question presented under the second issue is controlled *89 by Kimbrell's Home Furnishings, Inc., supra. It is held that the unrealized profits on installment sales at the beginning of the taxable year may not be included in petitioner's equity invested capital as accumulated earnings and profits in computing its excess profits credit for the taxable year. Decision will be entered under Rule 50.