THE J. L. GOODMAN FURNITURE CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 13552. Promulgated September 30, 1948.

*Henry Kutash, Esq.*, for the petitioner.
*H. M. Kohn, Esq.*, for the respondent.

## OPINION.

MURDOCK, *Judge*: It is conceded that the petitioner was not formed for the purpose of avoiding surtax on its shareholders and was not a mere holding or investment company. Both parties recognize that the earnings for each year may be reduced by the actual or estimated amounts necessary to pay Federal taxes. There is no substantial difference between the amount of earnings shown on the income tax returns for each year and the amount determined by the Commissioner to be correct, but it so happens that there were unusually large collections during these years, so that the income shown on the returns, using an installment method, substantially exceeds the profits accrued on the sales made during 1942 and 1943, which profits were the only

ones added to surplus by the petitioner during the those years, although they will not be reported for income tax purposes under the installment method until collected in later years.

The Commissioner has determined and here contends that the earnings and profits of the petitioner were permitted to accumulate during 1942 and 1943 beyond the reasonable needs of its business and that it was availed of during those years for the purpose of preventing the imposition of surtax on its shareholders. He argues that it had no "immediate" need for so large a surplus. The parties are in disagreement as to the amount of earnings for each year which must be considered in determining whether or not the petitioner permitted an accumulation thereof within the meaning of section 102. The Commissioner would start with net taxable income (including installment sale income), whereas the petitioner argues that for this particular purpose we should look to the actual addition to its surplus as shown by its books kept upon an accrual basis. Incidentally, the surplus shown on the returns and used by the Commissioner in his argument is less than that shown on the books by the amount of the reserve for uncollected installments. This difference between the parties need not be determined for present purposes. The conclusion has been reached that the petitioner was not availed of during 1942 and 1943 for the purpose of preventing the imposition of the surtax upon its shareholders through the medium of permitting its earnings or profits to accumulate instead of being divided or distributed, regardless of which of the two views above outlined may be correct. This conclusion for each year is justified if the petitioner shows that its accumulations of earnings at the end of each year were not beyond the reasonable needs of its business or if it shows in some other way that its failure to distribute all of its earnings of each year was not for the purpose of preventing the imposition of the surtax upon its shareholders.

The petitioner, at the end of 1942, had capital of $150,000 and surplus of about $850,000, or total working capital of about $1,000,000 over and above its liabilities. The same figure for the close of 1943 was about $1,072,000. Its current inventories during those years apparently ranged from about $91,000 to about $133,000. Its returns indicate that it had tied up in accounts receivable during those years between $56,000 and $151,000. It had once shown about $194,000 in accounts receivable on its returns, while the average amount of its accounts receivable shown there for a number of years preceding the taxable years was about $150,000. Its actual accounts receivable were much greater. The evidence also shows that a large amount of cash was necessary in order to operate the business. For example, its returns show that its annual operating expenses amounted to more than

$162,000 during the years 1942 and 1943. There was a reasonable necessity for sufficient capital to meet operating expenses for at least one year. It seems fair to conclude from the evidence that the petitioner was actually using in its business during those years at least $500,000 of the capital and surplus shown on its returns.

The business of the petitioner had grown substantially since its beginning and bona fide plans were being made during the years 1942 and 1943 for further growth. A part of the surplus accumulated through earnings was being retained during those years for the purchase of land and the erection of one or two branch stores in the newer residential districts of Cleveland. That was permissible under section 102. *William C. DeMille Productions, Inc.*, 30 B. T. A. 826; *General Smelting Co.*, 4 T. C. 313. Cf. *L. R. Teeple Co.*, 47 B. T. A. 270. Goodman's estimate at that time was that about $500,000 would be needed to establish those stores. That estimate does not appear to have been excessive. Subsequent events proved that he had underestimated the amount necessary for that purpose. Goodman gave satisfactory explanations for his failure to establish a branch store between 1935, when he first planned it, and 1947, when he bought the site. He never abandoned his intention to establish one or two branch stores, and he was justified in retaining the capital necessary for that purpose.

Goodman believed in 1942 and 1943 that the petitioner would enjoy a tremendous boom in sales after the war if it could survive the war. He was convinced of this because new furniture was so scarce during the war and because returning service men would be establishing many new homes for which furniture would be needed. Subsequent events proved that that opinion was well founded. He estimated in 1942 and 1943 that the petitioner would need funds for larger inventories and for the extension of credit in connection with this anticipated post-war business, as well as additional operating cash, in an amount about equal to the total capital and surplus in 1942 and 1943. It is not necessary to decide whether or not his estimates for this purpose were fully justified, since his estimates were honest, and substantial amounts of capital would be necessary and were necessary when the boom developed. *Lion Clothing Co.*, 8 T. C. 1181.

The petitioner did not have, at most, more than a few hundred thousand dollars of capital available for other purposes when due allowance is made for the capital necessary and actually used in the operation of the business during 1942 and 1943, and for the capital necessary for the proposed branch store. The retention of that additional capital was justified by the boom anticipated at the end of the war which would be enjoyed by the existing store, despite its location.

The petitioner, by the evidence, has sustained its burden of proof

to show that its earnings and profits were not permitted to accumulate during 1942 and 1943 beyond the reasonable needs of the business. Furthermore, it has shown that it was not availed of during those years for the purpose of preventing the imposition of surtax upon its shareholders through the medium of permitting earnings or profits to accumulate instead of being divided or distributed. The distribution of additional dividends to the stockholders would have increased their taxes, but Goodman testified directly that the petitioner had no purpose of preventing the imposition of surtax upon its shareholders by permitting a part of its earnings and profits for those years to accumulate instead of being divided or distributed, and his testimony is supported by other evidence. *C. H. Spitzner & Sons, Inc.*, 37 B. T. A. 511, 518. The corporation had a well established practice of distributing substantial dividends, which was adhered to in these years. It had distributed dividends in prior years even though losses had occurred. It declared in December 1942 and December 1943 dividends in as large amounts as were then deemed expedient, making due allowance for its anticipated needs, the uncertainty of its tax situation, and the then unknown amount of its profits from installment sales. This evidence, in connection with that already discussed and in addition to some that has not been discussed, justifies the conclusion that the petitioner was not subject to tax under section 102 for either 1942 or 1943.

The remaining issue for decision is whether the petitioner is entitled to include in its equity invested capital as "accumulated earnings and profits as of the beginning of" 1942, within the meaning of section 718 (a) (4), its uncollected profits at the beginning of the year resulting from installment sales made in previous years. Those profits have never been reported as income for income tax purposes because the petitioner has been using the installment sales method allowed under section 44 (a). It made an election, permitted under section 736 (a), to have its income for 1942 computed on an accrual basis for excess profits tax purposes, and it now argues that because uncollected profits on installment sales would represent income on an accrual basis, such profits from sales made in prior years should be recognized as a part of accumulated earnings and profits for excess profits tax purposes.

This same question, under facts not distinguishable from those here present, was fully discussed and decided against the taxpayer by this Court in *Kimbrell's Home Furnishings, Inc.*, 7 T. C. 339. That decision was followed in *South Texas Lumber Co.*, 7 T. C. 669, which differed only in that South Texas Lumber Co. had never made the election permitted under section 736 (a). Both of those decisions

were reversed upon appeal to the Circuit Court of Appeals. See 159 Fed. (2d) 608, and 162 Fed. (2d) 866. The Supreme Court then affirmed the Tax Court, in *Commissioner* v. *South Texas Lumber Co.*, 333 U. S. 496.

It is not clear whether the Supreme Court regards a case involving an election under 736 (a) as different from one in which no such election has been made. Mr. Justice Black stated in a footnote to his opinion in the *South Texas Lumber Co.* case that the Tax Court decision in the *Kimbrell's* case had been reversed, "but not on the contention here urged." The Circuit Court of Appeals for the Fourth Circuit, in reversing the decision of the Tax Court in the *Kimbrell's* case, held that section 35.736 (a)–2 of Regulations 112 was invalid and the accrual method, when used under section 736 (a), had to be used also under section 718 (a) (4) in order to carry out the purpose of section 736 (a). It relied upon *Commissioner* v. *Shenandoah Co.*, 138 Fed. (2d) 792, and the theory that income from installment sales is realized when the sales are made. Mr. Justice Black, in the *South Texas Lumber Co.* opinion, seemed to disagree with the *Shenandoah Co.* decision and the theory that income from installment sales is realized when the sales are made. He followed a regulation (section 29.115–3 of Regulations 111) and held that the taxpayer "can include in its equity invested capital only that portion of its profits from installment payments which it has actually received and on which it has already paid income taxes in the years of receipt." If he meant that language to apply in all cases, including those involving an election under 736 (a) then, of course, that opinion covers the present case, because the amounts here in question were never reported for income tax purposes.

Section 736 (a) allows a taxpayer to compute, "in accordance with regulations prescribed by the Commissioner with the approval of the Secretary," its income from installment sales on the basis of the taxable period for which such income is accrued, in lieu of the basis provided by section 44 (a). Section 35.736 (a)–2 of Regulations 112, which is applicable, expressly prohibits the inclusion in equity invested capital under section 718 (a) (4) of uncollected profits on installment sales made in prior years. Accumulated earnings and profits as of the beginning of the taxable year, within the meaning of section 718 (a) (4), would not include uncollected profits on installment sales made by a taxpayer reporting its income on the installment sale method under section 44 (a) because such profits had never been reported as income for income tax purposes. This Court reasoned in the *Kimbrell's* case that while section 736 (a) gave such taxpayers an election under which they might be relieved to the extent therein provided from

the hardship resulting from unusually heavy collections on installment sales in 1942 and subsequent years, nevertheless, section 736 (a) related only to the computation of income for excess profits tax purposes and had no effect upon equity invested capital to be computed under section 718 (a) (4). It pointed out that neither the words of the statute nor its legislative history indicated that the election would have any effect upon the computation to be made under section 718 (a) (4). It has been held that the election does not affect other provisions. *Hecht Co.*, 7 T. C. 643; affd., 163 Fed. (2d) 194; *Mackin Corporation*, 7 T. C. 648; affd., 164 Fed. (2d) 527. The decision of this Court in *Basalt Rock Co.*, 10 T. C. 600, has to do with section 736 (b) and is not in point in this case, which involves 736 (a). The Tax Court, with all due respect to the Circuit Court of Appeals for the Fourth Circuit, which reversed it, will continue, for the present, to follow its views as expressed in the *Kimbrell's* case.

*Decision will be entered under Rule 50.*