MARKSON BROS., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 11942, 14302.   Promulgated December 12, 1950.

*Myron S. Winer, Esq.*, and *Helmer M. Raphael, Esq.*, for the petitioner.

*Paul P. Lipton, Esq.*, for the respondent.

OPINION.

DISNEY, *Judge:* These cases, duly consolidated, involve excess profits taxes for the calendar years 1940 to 1943, inclusive. Deficiencies were determined for those years in the respective amounts of $16,211.70, $51,464.83, and $32,494.54. The year 1942 is involved because of petitioner's claim to an increased excess profits credit carry-back. The parties are agreed that the year 1940 is not longer in issue. Two questions are presented: (1) Whether after election under section 736 (a), Internal Revenue Code, the Commissioner erred in denying inclusion of uncollected profits on installment accounts receivable, from years beginning after January 1, 1940, not reported as income for income tax purposes, but included in excess profits income, in equity invested capital as capital as "accumulated earnings and profits" within section 718 (a) (4), Internal Revenue Code; and (2) whether such uncollected profits were properly eliminated by the Commissioner in determining, under sections 715 and 720, Internal Revenue Code, reduction for inadmissibles.

All facts were stipulated, as follows:

1. Petitioner is a corporation organized in 1907 under the laws of the State of Maine with its principal offices located at 100 Summer Street, Boston, Massachusetts. Petitioner has been engaged since 1937 in the business of selling clothing and jewelry at retail on the installment plan.

2. Petitioner filed its income and excess profits tax returns for the calendar years 1940 to 1943, inclusive, with the collector for the district of Massachusetts.

3. Petitioner reported its income from installment sales for Federal income and excess profits tax purposes for each of the calendar years 1938 to 1941, inclusive, on the installment method provided by section 44 (a) of the Internal Revenue Code and the corresponding provisions of prior revenue acts.

4. Pursuant to section 736 (a) of the Internal Revenue Code, petitioner, in its excess profits tax return for the calendar year 1942, elected and qualified, for the purposes of the excess profits tax, to report its income from installment sales on the basis of the taxable period for which such income accrued, in lieu of the basis provided by section 44 (a). The excess profits tax return for the calendar year 1942 was filed on June 15, 1943, pursuant to an extension of time granted by the Commissioner.

5. On June 14, 1943, petitioner filed amended excess profits tax returns for the calendar years 1940 and 1941, adjusting the income from installment sales to conform to such election, as required by section 736 (a) of the Internal Revenue Code. Pursuant to an extension of time, its excess profits tax return for the calendar year 1943 was filed on June 29, 1944, with income from installment sales computed on the basis of the taxable period for which such income accrued, in lieu of the basis provided by section 44 (a).

6. Petitioner reported its income from installment sales for Federal income tax purposes for the calendar years 1942 and 1943 on the installment method provided by section 44 (a) of the Internal Revenue Code.

7. Gross profits included in uncollected installment accounts receivable, arising exclusively out of sales made by petitioner after December 31, 1939, were as follows:

| Date | Amount |
| --- | --- |
| Jan. 1, 1941 | $592,302.35 |
| Jan. 1, 1942 | 841,909.57 |
| Jan. 1, 1943 | 400,066.32 |
| Dec. 31, 1943 | 353,120.92 |

8. None of the amounts set forth in paragraph 7 were reported by petitioner in its income tax returns for any of the calendar years involved, but all such amounts have been included in excess profits net income for excess profits tax purposes in returns filed on the accrual basis pursuant to section 736 (a) of the Internal Revenue Code.

9. In determining petitioner's excess profits tax credit for the calendar years 1941 to 1943, inclusive, respondent excluded from "accumulated earnings and profits", in determining equity invested capital, the amounts set forth in paragraph 7.

10. In computing the ratio of inadmissible assets to total assets for the calendar years 1941 to 1943, inclusive, for the purpose of determining invested capital, respondent reduced the balances of "installment" accounts receivable by the uncollected gross profits included therein arising from sales both before and after December 31, 1939. Gross profits included in uncollected "installment" accounts receivable arising out of sales made by petitioner after December 31, 1939, are the amounts set forth in paragraph 7.

11. Petitioner's original excess profits tax return for the calendar year 1941 disclosed a tax liability of $14,959.91, which was paid during the calendar year 1942 as follows:

| Date | Amount |
|---|---|
| March 19, 1942 | $3,739.98 |
| June 24, 1942 | 3,739.98 |
| Sept. 26, 1942 | 3,739.98 |
| Dec. 26, 1942 | 3,739.97 |

Petitioner's amended excess profits tax return for the calendar year 1941 disclosed a tax liability of $2,093.54. It filed a claim for refund of 1941 excess profits tax in the amount of $12,886.37 on June 30, 1943.

12. Petitioner's excess profits tax return for the calendar year 1943 disclosed a tax liability of $382,286.58, which was paid as follows:

| Date | Amount |
|---|---|
| June 29, 1944 | $95,875.00 |
| March 24, 1944 | 95,875.00 |
| Sept. 20, 1944 | 95,268.29 |
| Dec. 18, 1944 | 95,268.29 |

13. In determining petitioner's excess profits net income for the calendar years 1940 to 1943, inclusive, the following amounts shall be allowed as bad debt deductions in addition to the amounts previously allowed in determining petitioner's excess profits net income for the said calendar years:

| Year | Amount |
|---|---|
| 1940 | $33,457.69 |
| 1941 | 13,227.16 |
| 1942 | 2,134.99 |
| 1943 | 2,007.50 |

The petitioner, engaged at all times pertinent in the business of selling clothing and jewelry at retail on the installment plan, filed its Federal income tax returns, so far as we are here concerned, for the calendar years beginning after December 31, 1939,[1] to and including the calendar year 1943, upon an installment basis under section 44 (a) of the Internal Revenue Code. Pursuant to section 736 (a) of the Internal Revenue Code, the petitioner elected in its excess profits tax return for 1942, for the purpose of the excess profits tax, to report its income from installment sales on an accrual basis in lieu of the basis under section 44 (a); and filed its excess profits tax returns on such elected basis for the years 1940, 1941, 1942, and 1943. Our first and perhaps primary question is whether, having elected for excess profits tax purposes to use an accrual basis, the petitioner may include in its

---

[1] On trial and on brief the petitioner expressly waived and withdrew any claim to include in accumulated earnings and profits the gross profits arising from installment sales made prior to January 1, 1940, no part of which was included in taxable excess profits income; and announced that the contention was solely and exclusively as to gross profits arising from installment sales made after December 31, 1939, all of which were reported and included in taxable excess profits income on the accrual basis.

equity invested capital as "accumulated earnings and profits," under section 718 (a) (4), its uncollected profits on installment accounts for said years. It had not reported them for income tax purposes but it had reported them for excess profits tax purposes. It, therefore, contends that it may for excess profits tax purposes compute its equity invested capital by including them in its computation of accumulated earnings and profits.

The petitioner agrees that the facts herein involved are similar to the factual situation involved in *Kimbrell's Home Furnishings, Inc.*, 7 T. C. 339. Therein we held that a corporation, engaged like the petitioner in the sale of furniture at retail, which computed its normal tax net income on the installment basis but computed its excess profits income on the accrual basis pursuant to section 736 (a), could not include its reserve for unrealized profits on installment sales (for fiscal years ending August 31, 1941–1942–1943), as accumulated earnings and profits within section 718 (a) (4) of the Internal Revenue Code, in the computation of its equity invested capital. That case was reversed, 159 Fed. (2d) 608. However, in *J. L. Goodman Furniture Co.*, 11 T. C. 530 (involving installment sales in 1940, 1941, 1942), we declined to follow the reversal, announcing that we would for the present follow our views as expressed in the *Kimbrell's* case, *supra;* and we held that the petitioner, a retail furniture dealer, was not entitled to include in its equity invested capital as accumulated earnings and profits within the meaning of section 718 (a) (4) its uncollected profits resulting from installment sales in previous years, even though it elected under section 736 (a) to have its income computed on an accrual basis for excess profits tax purposes. In the *Goodman* case the uncollected gross profits, which the Commissioner in determining the deficiencies did not include in equity invested capital, were from sales made from 1929 to 1941.

We again had the same question before us in *Hart Furniture Co.*, 12 T. C. 1103 (involving installment sales in 1944–1945), and following the *Goodman* case, held that the petitioner, a retail furniture dealer, was not entitled to include in equity invested capital, as accumulated earnings and profits, its uncollected profits resulting from installment sales made in previous years, notwithstanding its election under section 736 (a) to have its income for excess profits tax purposes computed on an accrual basis. The amounts so excluded were profits from installment sales for fiscal years ending in March 1944 and 1945, respectively. We stated that we would continue to follow the views expressed by us in our *Kimbrell's* decision. The *Hart* case was appealed and on October 3, 1950, the United States Court of Appeals, Fifth Circuit, entered its order that pursuant to stipulation of the parties the cause was remanded to the Tax Court with direction to enter decision in favor of the petitioner [188 Fed. (2d) 968].

Our decision in the *Kimbrell's* case, *supra*, was followed by us in *South Texas Lumber Co.*, 7 T. C. 669, which (involving installment sales in 1937, 1938 and 1941), we said in the *Goodman* case, differed only from the *Kimbrell's* case in that in *South Texas Lumber Co.* the petitioner had never made the election permitted under section 736 (a). The *South Texas Lumber* case was reversed but the Supreme Court affirmed the Tax Court in *Commissioner* v. *South Texas Lumber Co.*, 333 U. S. 496. It held, in part, that a taxpayer which had elected to compute and report its profits on real estate sales on the installment basis could not.for excess profits credit include as equity invested capital uncollected accumulated profits from sales which the taxpayer had not reported as part of its taxable income in prior years, but could include only profit from installment payments actually received and on which income taxes had been paid in the years of receipt. It is to be noted that the installment sales involved in the *South Texas* case, *supra*, were as to two of the three years involved prior to January 1, 1940. Indeed the facts found, 7 T. C. 669 (670–671), indicate that only a comparatively small per cent of the sales were in 1941.

In *Hadley Furniture Co.* v. *United States*, 87 Fed. Supp. 590, the United States District Court, District of Massachusetts, considered this problem. The taxpayer, engaged in the retail furniture business, had reported income on the installment basis but for 1943 elected under section 736 (a) to report for excess profits tax purposes on the accrual basis—continuing, however, to report for income tax purposes under section 44 (a). The Court remarks that the election required readjustment of excess profits tax returns beginning with March 1, 1940. The Commissioner refused to include in average invested capital the company's reserve for unrealized profits, since March 1, 1940. The Court agrees with *Kimbrell's Home Furnishings, Inc.* v. *Commissioner*, 159 Fed. (2d) 608, disagreeing with the opinion of this Court in that case, also with our opinion in *Goodman Furniture Co.*, *supra*, and other cases to the same effect. It points out that the Supreme Court in the *South Texas Lumber* case had a different question because no election had been made under section 736 (a), and did not purport to overrule the *Kimbrell's* case, also points out that the income in all years since 1939 has been reported for excess profits tax purposes, and holds, therefore, that such income is properly included in equity invested capital. The Court further points out that this result seems to be proper under Regulations 112, section 35.736 (a)–2, since that regulation provides an exception, in the following language:

(2) * * * If the taxpayer uses the excess profits credits based on invested capital pursuant to Section 714, the determination of accumulated earnings and profits shall be made without regard to any adjustment resulting from election made under Section 736 (a) and this section, except as such election is reflected in the amount of income tax or excess profits tax payable for the taxable years beginning after December 31, 1939.

The Court, in effect, says that the election under section 736 (a) is reflected in the amount of excess profits tax payable—since 1939—and concludes therefore that the taxpayer had the right to include in equity invested capital its reserve for unrealized profits.

Still more recently this question has been before the United States Court of Appeals, Second Circuit, in *Busch's Kredit Jewelry Co.* v. *Commissioner*, 179 Fed. (2d) 298, which reversed a Memorandum Opinion of this Court. The taxpayer sold jewelry on the installment credit plan and computed its net income on the installment basis under section 44 (a). It made the election under section 736 (a) for the year 1944 and computed excess profits net income by the invested capital method. It claimed as accumulated earnings and profits included in invested capital, accrued profits after December 31, 1939. The Court agrees with the United States Court of Appeals for the Fourth Circuit in the *Kimbrell's* case and points out that in *Commissioner* v. *South Texas Lumber Co.*, *supra*, the Supreme Court had before it a case where net earnings were reported on the installment basis for excess profits tax as well as regular income tax. The Court considers that the method of accounting advocated by the Commissioner is just such a "hybrid method" as was held improper by the Supreme Court in the *South Texas Lumber* case.

The United States Court of Appeals, Ninth Circuit, considered this question in *Breuner Co.* v. *Commissioner*, 179 Fed. (2d) 685, and, reversing this Court in part, allowed the taxpayer in computing its invested capital to include as accumulated earnings and profits the amount of uncollected installment sales profits which were included in excess profits net income by reason of the taxpayer's election under section 736 (a), insofar as such profits were from years beginning after January 1, 1940. As to years before that date, the court says, the petitioner's election under section 736 (a) did not and could not apply, under the second and third sentences of that section, and such profits were properly excluded in computing accumulated earnings and profits. The Court disagreed with the Tax Court in its reliance upon *Commissioner* v. *South Texas Lumber Co.*, *supra*, pointing out that section 736 (a) was not involved in the *South Texas* case and it was therefore not in point.

With the exception of the *Hadley Furniture* case, the decisions on this subject do not seem to have taken fully into consideration the exception stated in Regulations 112, section 35.736 (a)–2, above quoted, and to the effect that the election under section 736 (a) shall not in case of use of invested capital method affect the determination of accumulated earnings and profits, *except* as the election is reflected in the amount of income tax "or *excess profits tax* payable for the taxable years beginning after December 31, 1939." (Emphasis added.) In short, the regulation seems particularly to permit the use of the

elected method in including accumulated earnings and profits in equity invested capital if, consistent with the regulation, the returns for either income tax or excess profits tax have been on the elected basis—for years after 1939. Moreover, it seems not only consistent with but actually required by the latter part of section 736 (a) which specifically provides that the income from installment sales after 1939 "shall be adjusted for the purpose of this sub-chapter to conform to such election"; and then repeats the thought by providing that in making the adjustments installment sales in years beginning before January 1, 1940, shall not be included in computing excess profits net income. Since "this sub-chapter" is the excess profits tax law, excess profits net income after January 1, 1940, roughly speaking, but not in years beginning before that date, is to be adjusted accordingly.

In the *Kimbrell's* case we noted that portion of section 35.736 (a)-2 of Regulations 112, above quoted, and observed in effect that it is obvious that petitioner's election may have effected a change in its profit or loss for prior years, and that accumulated earnings and profits at the beginning of the taxable year were altered by the election. We stated, however, that we could see no basis in the relief provision or its legislative history for concluding that the election brought into accumulated earnings an item theretofore not includible. In this connection it is to be noted that the Senate Committee Report on the Revenue Act of 1942, on this subject, stated: "The installment relief provided under this section is limited to the excess-profits tax" and cites an example where the taxpayer "would be eligible to compute its income from installment sales on the accrual basis, for the purposes of the excess-profits tax * * *." At 1942-2 C. B., page 540 and page 656, reference is made to the fact that "such taxpayer for excess profits tax purposes may elect * * * to compute * * * on the accrual basis." It appears to be clear, therefore, that the object of the legislation, both from its text and the committee reports, was to give the installment relief for all purposes of excess profits tax, and that if under the election, for the purpose of excess profits tax, the taxpayer's income for the previous years is modified accordingly, the statute seems affirmatively to intend that the new figures shall be used in computing excess profits tax. Certainly the computation of equity invested capital is a part of the "purposes of the excess profits tax." The petitioner having filed its election and reported and paid excess profits taxes on the new basis appears clearly not only within the language of section 736 (a) but also within the above-quoted language of the regulation. Those provisions do not permit determination of accumulated earnings and profits to be made with regard to or upon the basis of any adjustment resulting from the election *except* as the election is reflected in excess profits tax payable for years beginning after December 31, 1939. Certainly the petitioner has paid excess

profits tax reflecting such election and, therefore, under the regulation has a right to have its accumulated earnings and profits determined according to the election. Neither the *Goodman* case nor the *Hart* case following it adverted to the regulation or the exception therein stated.

The *South Texas Lumber Co.* case in the Supreme Court, as above noticed, did not involve an election under section 736 (a). The taxpayer there, selling real estate, did not report the value of its land installment notes but reported consistently on an "installment" basis, reporting the proportion which installment payments actually received bore to total contract price, so that the Court said the income was actually reported on a modified cash receipts basis so that unpaid balances were listed as "unrealized profit installment sales." These balances were nevertheless on the excess profits tax return reported as "accumulated earnings and profits" and included invested capital. The Court, in substance, merely said that this was reporting on a hybrid basis and it had no occasion to consider section 736 (a). On the contrary, it referred to the *Kimbrell's* case as reversed "but not on a contention here urged"; and since the *Kimbrell's* case did involve an election under section 736 (a) and the taxpayer there arrived at the sum sought to be included in invested capital "as the result of the adjustment required by the terms of section 736 (a) whereby the taxpayer's excess profits net income for the two preceding years were adjusted to an accrual basis" and since the Court of Appeals therein says that the "accumulated earnings and profits of a taxpayer on an installment basis who complies with section 736" should be treated similarly to one on the ordinary accrual basis and that the Commissioner has recognized the reality of the accumulated profits by subjecting them to the additional excess profits tax in the preceding years, when adjusted, it is altogether apparent that the reversal was solely because of application of section 736 (a). Therefore, the Supreme Court's statement that such reversal was "not on the contention here urged" demonstrates that the Supreme Court is affirmatively shown to have considered it had a different question than the one involved in the *Kimbrell's* case, and here involved, as the United States Court of Appeals pointed out in the *Busch's Kredit* case, *supra*, and the *Breuner* case, *supra*.

In *Basalt Rock Co.* v. *Commissioner*, 180 Fed. (2d) 281, certiorari denied, 339 U. S. 966, the United States Court of Appeals, Ninth Circuit, considering a case involving the election provided by section 736 (b), altogether parallel to section 736 (a), approved the computation of "adjusted excess profits net income" under section 710 (a) (1) (A) under the method elected, the percentage of completion method, although it refused to apply the elected method to the determination of the over-all tax rate limitation provided by section 710

**848**

(a) (1) (B), because the latter involves computation under section 15. Since here the computation of equity invested capital is clearly an integral part of computation of the excess profits income, the Ninth Circuit clearly appears to join the other cases above cited in approving computation of excess profits. under the method elected by the taxpayer.

In *Sokol Bros. Furniture Co.* v. *Commissioner*, 185 Fed. (2d) 222, the United States Court of Appeals, Fifth Circuit, declined to follow the·United States Court of Appeals for the Ninth Circuit in *Basalt Rock Co.* v. *Commissioner*, *supra*, in its refusal to apply the method elected by the taxpayer, and held that where a corporation had elected for excess profits tax purposes to accrue income from installment sales under section 736 (a) for the purpose of the 80 per cent over-all tax rate limitation under section 710 (a) (1) (B), the surtax net income should be computed under the accrual method elected and not under the installment method.

In a very recent case upon this point, *Davidsons, Inc.* v. *Birmingham, Collector* (June 20, 1950), the United States District Court for the Northern District of Iowa, Western Division, concluded that where a taxpayer elected pursuant to section 736 (a) of the Internal Revenue Code to report income from installment sales on the accrual basis, the inclusion of its reserve for unrealized profits from installment obligations in accumulated earnings and profits for purposes of computing excess profits credit based upon invested capital, was proper. Notice of appeal was dismissed September 21, 1950. See also *Commissioner* v. *Shenandoah Co.*, 138 Fed. (2d) 792; *House of Lindberg* v. *Commissioner* (CA–7, Sept. 29, 1950).

We conclude and hold that the petitioner under its election under section 736 (a), Internal Revenue Code, is entitled to compute equity invested capital within section 718 (a) (4) by including uncollected profits on installment accounts receivable for years beginning after January 1, 1940, which though not reported for income tax purposes were included in excess profits tax net income. *Kimbrell's Home Furnishings, Inc.*, *supra*, *contra*, will not longer be followed.

The second issue for our consideration is whether the uncollected profits on installment sales, after January 1, 1940, were properly eliminated in the determination, under sections 715 [2] and 720 (b) [3] of the

---

[2] For the purposes of this subchapter the invested capital for any taxable year shall be the average invested capital for such year, determined under section 716, reduced by an amount computed under section 720 (relating to inadmissible assets). * * *

[3] (b) RATIO OF INADMISSIBLES TO TOTAL ASSETS.—The amount by which the average invested capital for any taxable year shall be reduced as provided in section 715 shall be an amount which is the same percentage of such average invested capital as the percentage which the total of the inadmissible assets is of the total of admissible and in-

Internal Revenue Code, of the amount of reduction of invested capital for inadmissibles.

In determining the ratio between inadmissible assets and total assets under section 720 (b), computing the reduction from invested capital for inadmissibles, the petitioner included but the respondent excluded the gross profit included in uncollected installment accounts receivable. Only the amounts arising from sales made after January 1, 1940, are in issue. These were included in petitioner's taxable excess profits income.

It appears from the briefs of the parties that they consider this issue to depend upon our conclusion on the first issue, hereinabove considered. The respondent says that this issue "involves the same basic considerations as the issue relating to the includibility of uncollected gross profit on installment accounts receivable in equity invested capital." He further states, in substance, that if section 736 (a) does not affect computation of equity invested capital, as the Tax Court has held in the cases cited (*Kimbrell's Home Furnishings, Inc.*, etc.), it should not logically affect the computation of the reduction from invested capital because of inadmissibles. The parties appear to be in agreement that within section 720 (b) the amount attributable to each asset shall be adjusted basis under section 113, Internal Revenue Code.

We have above held that section 736 (a) does affect the computation of equity invested capital and, in our opinion, our conclusion on the first issue above is controlling on this issue. The petitioner having made the election and, on the elected accrual basis, having included the profits in uncollected installment accounts receivable (from sales after January 1, 1940) in taxable excess profits income, we think it follows and we conclude and hold that the Commissioner erred in eliminating such uncollected gross profits in determining the reduction for inadmissibles under sections 715 and 720 of the Code.

Reviewed by the Court.

*Decisions will be entered under Rule 50.*

RAUM, *J.*, concurs only in the result.

---

MURDOCK, J., concurring: The weight of repeated adverse views expressed by the Courts of Appeals causes me to abandon a view which I still believe sound and to accept the result in this case.

LEECH, TURNER, HARRON and OPPER, *JJ.*, agree with this concurring opinion.

admissible assets. For such purposes, the amount attributable to each asset held at any time during such taxable year shall be determined by ascertaining the adjusted basis thereof (or, in the case of money, the amount thereof) for each day of such taxable year so held and adding such daily amounts. * * *