OPINION. Opper, Judge: It is true that up to the end of 1948, the latest year before us, not a single dollar of taxable dividends had ever been declared by petitioner, although as of the end of that period a surplus of almost half a million dollars had been accumulated of which over half was in marketable securities unrelated to petitioner’s business. It is likewise true that during this time loans were made by petitioner to its sole stockholder. This is some indication that under section 102[1] the purpose of the absence of dividends was to furnish funds to the stockholder while at the same time avoiding the imposition upon him of the high surtaxes which the record shows would have been due had petitioner’s earnings been distributed to him as dividends. Helvering v. Nat. Grocery Co., 304 U. S. 282; Helvering v. Stock Yards Co., 318 U. S. 693. But we have made the finding which we think the record compels, that a reasonable requirement of the business then existed for these accumulations. The working capital needed to fulfill petitioner’s agreement with General Motors coupled with the expenses of physical expansion and the continuing possibility that it might be required to finance a new dealership in the adjoining St. Albans territory [2] are alone sufficient to account for all of the contemporary surplus.[3] Petitioner’s directors having currently faced the problem, cf. Smoot Sand & Gravel Corp. v. Commissioner, (C. A. 4) 241 F. 2d 197, reversing T. C. Memo. 1956-82, certiorari denied 354 U. S. 922,[4] and having, as we have found, made the required analysis of petitioner’s position, and the consequent decision that its existing resources could not safely be dispensed with, we are not in a position to assume, as would be necessary, that their true judgment was otherwise, or that the ostensible purpose of the failure to distribute dividends was different from its real motivation. Dill Manufacturing Co., 39 B. T. A. 1023, 1031; J. L. Goodman Furniture Co., 11 T. C. 530. On the situation as it existed during the tax period in controversy, we conclude that respondent’s action was unjustified. We arrive at this result on the record as a whole and, although the matter is the subject of controversy between the parties, without the necessity of determining under section 534, I. R. C. 1954, where the burden of proving[5] business necessity lies. Cf. Pelton Steel Casting Co., 28 T. C. 153, on appeal C. A. 7. While some possibility always remains that the presumption of the determination’s correctness survives even proof of reasonable needs, see Felton Steel Casting Co., supra, this proceeding was litigated on the apparently mutual assumption that decision of this total issue would dispose of the matter. See Smoot Sand & Gravel Corp. v. Commissioner, supra. It goes without saying that subsequent developments in later years might lead to altogether different conclusions. We are required to express no opinion as to such issues. Suffice it to say that nothing shown here as to petitioner’s conduct after 1948 throws doubt on the conclusion we have reached as to its purpose during the period under review. To adjust for conceded issues, Decision will he entered under Rule 50. SEC. 102. SURTAX ON CORPORATIONS IMPROPERLY ACCUMULATING SURPLUS. (a) Imposition op Tax. — There shall be levied, collected, and paid for each taxable year (in addition to other taxes imposed by this chapter) upon the net income of every corporation (other than a personal holding company as defined in section 501 or a foreign personal holding company as defined in Supplement P) if such corporation, however created or organized, is formed or availed of for the purpose of preventing the imposition of the surtax upon its shareholders or the shareholders of any other corporation, through the medium of permitting earnings or profits to accumulate instead of being divided or distributed, a surtax * * * Although respondent challenges the need for the St. Albans dealership, he nowhere questions petitioner’s estimated figures, assuming the franchise were acquired. The increase in surplus during the 2 instant years was $288,26-7. Attributing $250,000 to the prospective franchise acquisition, $36,945 to actual expenses of contemplated additional facilities, and $1,885 to deficiencies in working capital under the General Motors agreements, it will be seen that $288,830, or slightly more than the growth in surplus, was .required. “* * * In order to determine whether profits were accumulated for the reasonable needs of the business or to avoid the surtax upon shareholders, the controlling intention of the taxpayer is that which is manifested at the time of the accumulation, not subsequently declared intentions which are merely the products of afterthought. K. O. M. A. Inc., v. Commissioner, * * * [ (C. A. 10) 189 F. 2d 390] ; Bride v. Commissioner, * * * [(C. A. 8) 224 F. 2d 39, certiorari denied 350 U. S. 883].” SBC. 534. BURDBN OF PROOF. (a) General Rule. — In any proceeding before the Tax Court involving a notice of deficiency based in whole or in part on the allegation that all or any part of the earnings and profits have been permitted to accumulate beyond the reasonable needs of the business, the burden of proof with respect to such allegation shall— ******* (2) if the taxpayer has submitted the statement described in subsection (c), be on the Secretary or bis delegate with respect to the grounds set forth in such statement in accordance with the provisions of such subsection. * . * * * * * (c) Statement by taxpayer. — Within such time (but not less than 30 days) after the mailing of the notification described in subsection (b) as the Secretary or his delegate may prescribe by regulations, the taxpayer may submit a statement of the grounds (together with facts sufficient to show the basis thereof) on which the taxpayer relies to establish that all or any part of the earnings and profits have not been permitted to accumulate beyond the reasonable needs of the business.