Cecil B. DeMille, Petitioner, et al.,[1] v. Commissioner of Internal Revenue, Respondent.

Docket Nos. 52995, 52996, 61290, 61291, 65122, 65123, 71951, 71952.

Promulgated January 31, 1935.

A. Calder Mackay, Esq., for the petitioners.

M. B. Leming, Esq., R. J. Bopp, Esq., and J. H. Miller, Esq., for the respondent.

---

[1] Proceedings of the following petitioners are consolidated herewith: Cecil B. deMille Productions, Inc., and Constance A. deMille.

1170

1172

OPINION.

GOODRICH: In view of the interpretative discussions as to the legislative history, and prohibitive purposes of section 220 of the Acts of 1924 and 1926, and section 104 of the Revenue Act of 1928 [3] (the material provisions of which are almost identical) contained in prior decisions of cases arising under these provisions,[4] it is unnecessary to here attempt any further observations concerning the statute. Certainly, this case demands none for, as submitted, it requires us only to answer these very definite questions of fact: Was this company organized, or was it used for the purpose of preventing the imposition of surtaxes on its stockholders; did it accumulate, rather than distribute its earnings, so that surtaxes might be avoided? There is, of course, considerable argument as to what may be the " reasonable needs " of the corporate petitioner's business, and whether its accumulations exceeded that measure but, after all, that line of inquiry leads but to a rebuttable presumption granted by the statute as an aid to enforcement. The extensive record in this case would not justify the resting of it upon a presumption; the deeper question must be answered.

Respondent makes a strong case supporting his action in laying a tax under these sections, and maintaining his position under petitioner's attack. But it is a case based upon circumstantial evidence. He points out that in the beginning, Cecil deMille, his wife and their associates, had little with which to do business beyond the intelligence, professional skill, and reputation of deMille as a *director* of motion pictures. He argues that the initial earnings

---

[3] SEC. 220. (a) If any corporation, however created or organized, is formed or availed of for the purpose of preventing the imposition of the surtax upon its shareholders through the medium of permitting its gains and profits to accumulate instead of being divided or distributed, there shall be levied, collected, and paid for each taxable year upon the net income of such corporation a tax equal to 50 per centum of the amount thereof, which shall be in addition to the tax imposed by section 230 of this title and shall (except as provided in subdivision (d) of this section) be computed, collected, and paid upon the same basis and in the same manner and subject to the same provisions of law, including penalties, as that tax.

(b) The fact that any corporation is a mere holding or investment company, or that the gains or profits are permitted to accumulate beyond the reasonable needs of the business, shall be prima facie evidence of a purpose to escape the surtax.

[Subdivisions (c) and (d) here omitted.]

[4] *French Mortgage & Bond Co.*, 38 Fed. (2d) 841; *United Business Corporation of America*, 19 B. T. A. 809; affd., 62 Fed. (2d) 754; certiorari denied, 290 U. S. 635; *Tway Coal Sales Co.* v. *United States*, 3 Fed. Supp. 668; *Williams Investment Co.* v. *United States*, 3 Fed. Supp. 224; *Keck Investment Co.*, 29 B. T. A. 143; *William C. deMille Productions, Inc.*, 30 B. T. A. 826 (on review; C. C. A., 9th Cir.).

of the partnership which preceded this company, and since then, the greater part of the income both of the partnership and the corporation were garnered because of Cecil's personal earning power, based upon his recognized talents as a *director*.

Respondent points out further that the creation of the partnership distributed (so far as taxability was concerned) amongst several people the salary theretofore earned by, and taxable alone to deMille, and that Cecil's taxes thus were reduced. (Of course, the partners were taxed on their distributable shares of the firm's earnings.) The formation of the partnership, he argues, marked the first step in carrying out a conceived avoidance scheme.

Continuing, he calls attention to the fact that the corporation, this petitioner, was organized, took over the assets and the business of the partnership, not long after the Revenue Act of 1921 had freed corporate incomes from the war-time levies laid upon them, so that the share of profits on pictures accruing to this group under the contracts could be received by a corporation subject to a lower tax than that levied upon individual recipients. That result, he argues, proves that the company was *formed* for purposes of avoidance. And as proof that it was *availed of* for that purpose thereafter, respondent deems sufficient the fact that a large part of the company's earnings were from year to year accumulated as investments in securities, in real estate, and in numerous varied enterprises, many of which had little or no relation to the motion picture business.

There is weight to respondent's argument. The facts are that substantial earnings which, at least in the beginning, arose mainly from the personal talents and efforts of one man, were turned in to a firm; that later, a corporation was formed, and those earnings, together with assets previously bought with prior accumulations of them, were transferred from the firm to the company; that this corporation, although it distributed substantial amounts as salaries, along with some dividends, withheld from distribution to its shareholders, a large part of its income. And, of course, the shareholders have not paid the surtaxes for which they would have been liable had they received as dividends the amounts so withheld.

But the taxes under these statutory provisions are not imposed because of effects; avoidance *per se* is not prohibited. It is the *purpose*, the intention motivating a course of conduct, which is made controlling by the very words of the statute. Unless the *purpose* was to prevent the imposition of surtaxes, the tax may not be imposed. Admittedly, circumstances may evidence a purpose, and circumstances such as we find here, without a further showing, justify the finding of the prohibited purpose at which these provisions are aimed.

However, there is a further showing in this case—one which cannot be disregarded, and which overweighs the evidence of purpose presented by the circumstances. DeMille, McCarthy, and Fisher, all connected with the first organization, the partnership, all having to do with the formation of the corporation, all serving thereafter as directors of the company (McCarthy until 1924; Fisher until 1926) testified. Under oath, each flatly denied that the company was formed for the purpose of preventing the imposition of surtax upon its shareholders; or that it was availed of, or accumulated its profits for that purpose. They denied that the matter of surtax avoidance by the shareholders was ever discussed, or that the possibility of such avoidance was ever a consideration in determining the disposition of the company's earnings. These denials remain unshaken by cross-examination. Of course, such denials are not entirely controlling. Perhaps they are to be expected, for without them there would be no controversy.

But the proof here goes well beyond mere denial of prohibited intent. It shows affirmatively a plan necessitating the accumulation of earnings and the end to which they might ultimately be used. The witnesses testified fully as to the purpose for which the company was formed—to create an organization for the independent production of pictures—and as to their purpose in accumulating, rather than distributing its earnings, and building a surplus—to enable that organization to finance its own productions.

There is extensive evidence concerning the needs of the business, the necessity for a large surplus to meet the cost of its own productions in event of cancellation of the company's contracts, and concerning the friction and disputes which pointed to imminent cancellation, against which the only protection was that independence assured by an ample reserve. The testimony concerning the purpose for which the corporation was formed and the purpose for which its surplus was accumulated is corroborated by the minutes of the meetings of the directors of the company—the contemporaneous record reflecting the company's activities and the reasons therefor.

We are not ready to disregard this testimony or to say that the recorded thoughts of the company's guiding heads, the writing of which was begun more than a decade ago, was artfully drawn for self-service against the future day of trial. Those denials of wrongful intent, those declarations of a purpose other than the avoidance of taxes in the building of a surplus, we believe, as against the evidence of circumstance from which might be drawn inferences to opposite effect.

Nor are we ready to say that the plans for the company and the purpose for which its surplus was accumulated were too far-fetched

to be within the limits of reasonable business ambition. From the record it is apparent that the company, when producing under contracts for others, was beset with controversies and difficulties and frequently, if not constantly, endangered by the possibility of cancellation of its contracts. The desire and determination of the stockholders to advance the activities of their company from those of a producer under contracts, to those of an independent producer, financed sufficiently to insure the making and marketing of its own pictures, seem not unreasonable.

Whether the money necessary to the realization of that determination is raised upon loans, by sale of stock, or by conservation of earnings seems immaterial, so long as the last plan does not result in an accumulation of profits unreasonable to the needs of the business. In view of the evidence as to the costs of picture production, and as to the marketing hazards of the business which involve the risk that the talent and taste of the producer may not satisfy the public fancy, we cannot say that the surplus accumulated by this corporate petitioner was beyond that necessary to its ends. Consequently, for these reasons, we have made our finding, and hold that respondent erred in imposing upon petitioner the taxes provided by these sections of the statutes.

Because of divergence of facts—and each case involving this issue must bottom on its own facts—the prior decisions cited give little support to respondent's determination. In some of the cases, the principal shareholders transferred to the corporations substantial amounts of income-producing properties, permitting the corporations thereafter to receive and accumulate those revenues, and thus immediately reducing their individual incomes and the taxes thereon. Not so here. Neither Cecil nor Constance deMille stripped themselves of assets. On the contrary, each owned substantial properties beyond their stock of petitioner, and each individually received the income therefrom.

In other cases, the controlling stockholders enjoyed the profits of the corporations by means of large loans to themselves, which they did not repay. Again, not so here. Constance deMille borrowed nothing from petitioner; Cecil ran a small open account which in 1927 was overpaid, and in addition borrowed on note. His initial indebtedness to the company was discharged by the transfer of real estate. In 1924, the company owed deMille a net amount of $40,000. In 1925, Cecil owed it $10,000. The largest loan made him was in 1926—$90,000 at one time, and in the same year about $13,000 more. By the end of the next year he had repaid $48,000; in 1928 he repaid about $40,000 more, and in the next year petitioner owed him about $72,000.

We cannot but comment upon the attempt made by petitioner on brief to take much of our time with criticisms of the design and effect of the statutory provisions here involved. Such efforts are wasted. The laws are enacted by the Congress, not by us, and " arguments as to expediency, or of economic mistake or wrong in taxation " are here immaterial and have no place. *Brushaber* v. *Union Pacific R. R. Co.*, 240 U. S. 1. Our sole duty is to see to it that the mandates of the statutes are followed in the cases brought to us for decision. As to petitioner's contentions respecting the unconstitutionality of the statute, these heretofore have been decided adversely.

Since Cecil and Constance deMille agreed, prior to 1924, that compensation for her personal services should be her separate income, respondent erred in including in Cecil's income for the years 1924 to 1927, inclusive, the salaries paid Constance by Productions. *Howard C. Hickman*, 27 B. T. A. 807; affd., 70 Fed. (2d) 985.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

---

McMAHON, dissenting: It appears from the findings of fact that, from the organization of Cecil B. deMille Productions, Inc., through the years before us, deMille and his associates adhered to the " purpose, which they had pursued as partners, namely, to save the company's earnings, to accumulate a fund sufficient so that the company might be able to produce its own pictures "; that " the usual method by which independent producers financed their pictures at that time " was by " borrowing money from distributors "; that " its personnel most of the time was carried on the payrolls of concerns with which this company made contracts "; that " it made no pictures except under contracts, and into the productions of such pictures it put no money of its own, the funds being supplied by the other parties to the contracts. Most of its picture profits were from productions personally directed by deMille, although some income came from about 30 pictures produced under his supervision "; and that " while the greater part of Productions' income was its share of picture profits received under its contracts, it dealt actively in securities, both listed and unlisted, and in real estate. It acquired a number of business properties which it let; it bought a theatre or two; it purchased several ranch properties, some used for purposes of picture-making, others operated to some small extent for farming or fruit-growing. It sought to invest and lay aside all the money it could, and took interests in varied enterprises—Arizona cotton lands, oil development, a construction company, and others—some successful, and some not."

There is no showing that the accumulation of "the gains or profits" in question here was within "the reasonable needs of the business" activities of the corporation, numerous and diverse, as actually engaged in during the years before us; most of those business activities, all but one or two at best, were not germane to the production by it of pictures for others under contracts; and none of the other activities were essential to such production. In construing and applying the statute we are concerned with "the business", not a business, which was actually carried on; and in the last analysis the vital question here presented, in this respect, is as to whether its accumulation of "gains or profits" in order that it "might be able to produce its own pictures" in the future, which it had never done, instead of producing pictures for others under contract as it had always done, is within or "beyond the reasonable needs of the business" of the corporation as thus carried on. If it is beyond such "reasonable needs", then the respondent made out a prima facie case under the same subsection of the statute which is applicable and there arises another question as to whether petitioner has overcome the prima facie case made out by respondent.

In my opinion, as to the petitioner, Cecil B. deMille Productions, Inc., the facts establish "that the gains or profits" were permitted " to accumulate beyond the reasonable needs of the business ", within the meaning of section 220 of the Revenue Acts of 1924 and 1926, and section 104 of the Revenue Act of 1928, applicable here. The words " the business " as there used mean the business as actually carried on at the time in question. These words do not mean business which the corporation is authorized to do but has not done. They do not mean business which the corporation merely wishes to do or even contemplates doing at some future time. They do not mean wholly new business or a wholly new phase of an old business which has never been actually engaged in. They do not mean a type of business activity which has never been engaged in by the corporation but which may or may not be engaged in at some future time so that an effort may be made to realize the personal ambition of a stockholder, however laudable, even though he be the moving spirit and genius of the corporation. They do not permit saving up money or accumulating surplus to be used at some future time in an effort to satisfy such ambition. The statute deals with the realities of "the business ", as actually carried on, not with the hopes or aspirations of its stockholders. Any other construction of the statute would be unreasonable and beyond the ordinary meaning of its language. In the instant proceeding it affirmatively appears that the surplus in question was not necessary and was not accumulated to enable the corporation to carry on its business as carried on in the years before us,

but it was "permitted to accumulate" to enable the corporation to do something different from that which was done in the years in question. During those years it did not produce pictures; it rendered services, personal in character, to others who did produce pictures; and it desired, thereafter, to produce its own pictures, something quite different from merely rendering services to others who did produce pictures. This contemplated a departure from carrying on its business as it had been carried on in the years in question. Such accumulation is "beyond the reasonable needs of the business" within the meaning of the statute. Hence, we have here, under the same subsection of these statutes, "prima facie evidence of a purpose to escape the surtax."

In my view this prima facie case made by the respondent has not been overcome. I appreciate that there is a finding of fact that "Cecil B. deMille Productions, Inc., was not formed, nor, during the years 1924 to 1929, inclusive, was it availed of for the purpose of preventing the imposition of surtaxes upon its shareholders through the medium of permitting its gains and profits to accumulate, instead of being divided or distributed"; and that it is in effect stated in the opinion that the witnesses testified that the purpose in accumulating the earnings of the corporation and building a surplus was "to enable that organization to finance its own productions"; but the majority opinion, in effect, holds, and in my opinion erroneously, that its "gains or profits" were "not permitted to accumulate beyond the reasonable needs of the business." I am unable to conclude that such finding would have been made if the majority had proceeded upon the theory that the corporation's "gains or profits" were "permitted to accumulate beyond the reasonable needs of the business." On the contrary, the inescapable inference to be drawn is that the error of the Board in this respect induced the conclusion of fact which is reflected by the finding as made. Accepting the premise that the facts establish a prima facie case for the respondent, and taking into consideration the entire record, there is, in my opinion, no adequate basis for the majority's finding or conclusion to the effect that the corporation, during the years 1924 to 1929, inclusive, was not availed of for the purpose of preventing the imposition of the surtax upon "its shareholders through the medium of permitting its gains and profits to accumulate instead of being divided or distributed." Subsection (a) and (b) of section 220, *supra.*

Respondent has not only made out a prima facie case under the statute, but there is other evidence, some of which is circumstantial, which tends strongly to support his determination in this respect. Circumstantial evidence is often more convincing than categorical denials of purpose made long after the events occur, and so it is

here. The majority opinion states that " of course, such denials are not entirely controlling. Perhaps they are to be expected, for without them there would be no controversy." The majority opinion does point out at full value in considerable detail many of the strong elements of the proof which tends to support respondent's contention. It is not necessary to impute perjury to any witness in reaching the conclusion which I have reached and I do not do so. To the extent that their denials are, in effect, conclusions of fact, which we must form from all of the proof bearing upon the subject of purpose, they are not binding upon us. There is other proof upon the subject which is inconsistent with such conclusions of the witnesses. The only material result of consequence accomplished during the years before us by the accumulations in question is that each stockholder of the corporation has been enabled to " escape the surtax " in question; this result followed inevitably from what was done. It is elementary that intent, which is synonymous with purpose, is to be inferred from acts or conduct; and that it is presumed that the natural and necessary or probable consequences of acts, intentionally performed, are intended. It is apparent that the accumulations of surplus in question were accomplished with a high degree of intelligence on the part of those responsible for them. Of course, accumulations of surplus for a purpose which carried them " beyond the reasonable needs of the business ", such as we have here as pointed out herein, which is the very thing, in view of the statute, which establishes the prima facie case made out by the respondent, can not serve to overcome such prima facie case; they are " prima facie evidence of a purpose to escape the surtax."

As heretofore pointed out herein, there are findings that " the usual method by which independent producers financed their pictures at that time ", was by " borrowing money from distributors "; and that " its personnel, most of the time was carried on the pay rolls of concerns with which this company made contracts." There is no showing that either of these methods cannot be adopted when, as and if the corporation actually engages in producing its own pictures independently, instead of producing pictures for others. The corporation, with deMille dominating it as he did, was apparently quite resourceful in financing all of its activities without disturbing any of the surplus in question here.

In my opinion the prima facie case made out by the respondent, coupled with the proof which supports his contentions, has not been overcome by the proof which tends to support the contentions of the petitioners upon the subjects of the " reasonable " financial needs of " the business " of the corporation, or its purposes or those of its stockholders " to escape the surtax "; and, for the reasons herein set forth, I cannot agree with the majority in so far as they

hold that any of the "additional" taxes in question herein, as specified in subsection (a) of section 220, *supra*, applicable here, are not to be imposed.

SMITH and ADAMS agree with this dissent.