Korrick's, Inc. v. Commissioner.
Korrick's, Inc. v. Commissioner
Docket Nos. 31448, 35298.
United States Tax Court
1953 Tax Ct. Memo LEXIS 324; 12 T.C.M. (CCH) 327; T.C.M. (RIA) 53096; March 27, 1953
*324 Petitioner is a department store in Phoenix, Arizona. Its business expanded rapidly between 1941 and 1950. During the taxable years ended January 31, 1947, 1948, and 1949, it had substantial net profits out of which it paid large taxes to the Federal Government, distributed substantial cash dividends and salaries to the two major stockholders, and added reasonable amounts to surplus. Held, upon all the facts, the amounts which petitioner added to its earned surplus in each of the taxable years were not unreasonable in amount in view of the needs of the business, and petitioner was not availed of in any of the taxable years for the purpose of preventing the imposition of surtax upon its stockholders. Joseph D. Peeler, Esq., 819 Title Insurance Building, Los Angeles, Calif., and Eugene T. Garrett, Jr., Esq., for the petitioner. Charles H. Chase, Esq., for the respondent. BLACK Memorandum Findings of Fact and Opinion Respondent has determined deficiencies in income tax of Korrick's, Inc., as follows: Taxable Year
Ending
January 31
Docket No.
Deficiency
1947
31448
$ 78,692.20
1948
31448
69,848.00
1949
35298
29,477.34
$178,017.54
The two cases have been consolidated, and raised the same major issue relating to liability for surtax under section 102 of the Internal Revenue Code which is explained in the deficiency notice in Docket No. 31448, as follows: "It is held that your corporation was formed or availed of for the purpose of preventing the imposition of the surtax upon your shareholders *326 through the medium of permitting your earnings and profits for the taxable years ended January 31, 1947 and January 31, 1948 to accumulate beyond the reasonable needs of your business instead of being divided or distributed. Accordingly, surtax pursuant to the provisions of section 102 of the Internal Revenue Code is imposed upon you for each of the aforementioned years." The identical explanation is given for the year ending January 31, 1949. By appropriate assignments of error petitioner contests these adjustments. Petitioner also assigns as error respondent's computation in determining section 102 net income for the year ending January 31, 1947. as follows: "III - The failure to allow as a deduction, in determining the income subjected to the surtax for the fiscal year ended January 31, 1947, a net amount of $38,985.78, representing additional Federal income and excess profits taxes for prior years which accrued and were paid during said fiscal year." Some more or less minor adjustments made by the Commissioner to the net income as reported by petitioner on its returns for the taxable years are not contested. In view of the adjustments made by the *327 Commissioner which are not contested, he has set forth the following division of the deficiencies in his brief: Taxable Year
Ended
Tax
Deficiency
January 31, 1947
Income (Normal)
$ 1,545.61
Income (Surtax -
Sec. 102)
77,146.59
January 31, 1948
Income (Normal)
770.88
Income (Surtax -
Sec. 102)
69,077.12
January 31, 1949
Income (Normal)
5,191.25
Income (Surtax -
Sec. 102)
24,286.09
Total (Normal)
7,507.74
Total (Surtax -
Sec. 102)
170,509.80
Total Deficiency
$178,017.54
Findings of Fact Some of the facts have been stipulated and are found accordingly. Petitioner is a corporation organized in 1922, under the laws of the State of Arizona. Its return for the fiscal years ended January 31, 1947, 1948, and 1949, were filed with the Collector for the District of Arizona. It owns and operates a general department store in Phoenix, Arizona, which is the largest independent store in the state. The business was founded in 1895 by Sam Korrick and upon his death in 1903, it passed to Charles Korrick. Abe Korrick entered the business in 1906, and it was operated as a partnership from 1912 until it was incorporated in 1922. *328 Charles Korrick is president of Korrick's, Inc., and he is also the "financial man" of the organization. Abe Korrick is the vice president, treasurer, and general manager. The stock of Korrick's, Inc., was owned as follows: Jan. 31,
Jan. 31,
Jan. 31,
1947
1948
1949
Abe Korrick
3,147
3,047
3,047
Charles Korrick
3,358
3,158
3,138
Alma Korrick (Abe Korrick's wife)
200
200
200
Patricia Korrick (Abe Korrick's daughter)
100
150
150
Robert Korrick (Abe Korrick's son)
100
150
150
Louise Liebman (Charles Korrick's daughter)
100
200
210
Edgar Korrick (Charles Korrick's son)
100
200
210
Others
155
215
245
Total
7,260
7,320
7,350
The first store was only 25 by 50 feet in area, and finally grew to 75 by 80 feet, with two stories, on rented property. In 1908, they bought the corner lot on Washington and First Streets which was 60 by 137 1/2 feet. By 1913, the business had saved some money and started the erection of a new building on the corner lot consisting of three floors, a very small mezzanine, and a basement, which was completed in October 1914. In 1920, the partnership acquired a long-term lease on the adjoining 40-foot *329 lot and started to accumulate funds with which to finance additional construction and equipment. In 1928, the land and building were transferred to a new corporation, Korrick Investment Company, in exchange for its stock which was distributed pro rata to the stockholders of petitioner. This new corporation was formed so that any mortgage on the prospective construction of a new building would not be mixed up with the department store business. In 1929, a new building was constructed and there has been no subsequent change in the size of the building. The stock of the Korrick Investment Company was held by the two major stockholders of petitioner, and others, as follows: Jan. 31,
Jan. 31,
Jan. 31,
1947
1948
1949
Charles Korrick
3,310
3,310
3,310
Abe Korrick
3,300
3,300
3,300
Others
20
20
20
Total
6,630
6,630
6,630
For the taxable periods involved petitioner's rent expenses were as follows: Year Ended
Amount
January 31, 1947
$127,169.84
January 31, 1948
145,530.89
January 31, 1949
173,302.64
When the partnership erected its building in 1913-1914, it found that it had insufficient funds and had to borrow to the *330 limit on first and second mortgages, and also had to borrow extensively from suppliers of merchandise and equipment. Around 1914, there were many bankruptcies in petitioner's field of business, and for awhile petitioner's business faced financial difficulties. As a result of this experience, Abe Korrick and Charles Korrick decided not to borrow money for a building venture. This policy was followed in financing the new building and equipment in 1929. Except for a short period around 1932 when the State of Arizona went on a scrip basis and the store had to accept warrants from state employees, petitioner has never borrowed any funds from banks. During the taxable years 1944 to 1950, petitioner's disposition of its net income was as follows: Year
Ended
January
Net Income
Federal
Net Income
31
Before Tax
Tax
After Tax
1944
$550,226.12
$459,831.50
$ 90,394.62
1945
632,834.41
523,981.65
108,852.76
1946
595,134.34
438,945.20
156,189.14
1947
545,431.40
208,458.55
336,972.85
1948
517,172.79
199,508.22
317,664.57
1949
400,400.76
142,656.14
257,744.62
1950
390,856.66
140,154.04
250,702.62
Year
Ended
January
Dividends
Earnings
Accumulated
31
Paid
Retained
Surplus
1944
$ 51,695.00
$ 38,699.62
$ 614,088.27
1945
73,850.00
35,002.76
696,331.28
1946
65,790.00
90,790.00
901,342.56
1947
145,200.00
191,772.85
1,078,492.11
1948
128,100.00
189,564.57
1,306,142.43
1949
165,225.00
92,519.62
1,395,933.83
1950
219,000.00
31,702.62
1,407,953.67
*331 Abe Korrick and Charles Korrick, the major stockholders and officers, each received salaries and dividends from the corporation in the taxable years in question as follows: Taxable Year Ended January 31
1947
1948
1949
Salaries
$31,153.85
$31,153.85
$ 46,533.56
Dividends (Ap-
proximately
45% of total
dividends)
65,385.00
57,645.00
74,351.00
Total
$96,538.85
$88,798.85
$120,884.56
The total additional individual income surtaxes which would have been paid by both Abe and Charles Korrick had all profits of petitioner, after the payment of corporate taxes, been distributed, are as follows: Year
Amount
1947
$129,750.06
1948
135,356.92
1949
52,758.92 The above figures were stipulated but do not show separately the additional surtaxes which each of the brothers would have paid. Petitioner's condensed balance sheets for the fiscal years January 31, 1946 to January 31, 1950, inclusive, were as follows: January 31,
January 31,
January 31,
January 31,
January 31,
Assets:
1946
1947
1948
1949
1950
Cash
$ 614,054.05
$ 268,161.99
$ 189,727.52
$ 252,735.34
$ 109,925.61
Stocks &
Bonds
1,320,362.09
1,219,215.80
1,132,294.96
1,125,242.83
1,123,152.34
Total
Cash &
Securi-
ties
$1,934,416.14
$1,487,377.79
1,322,022.48
$1,377,978.17
$1,233,077.95
Korrick's
Share-
holders
Accounts Receiv-
able
110,306.36
21,414.78
117,596.94
101,554.98
0.00
Total
Liquid
Assets
$2,044,722.50
$1,508,792.57
$1,439,619.42
$1,479,533.15
$1,233,077.95
Accounts
Receiv-
able
191,450.14
365,619.36
625,315.69
727,317.03
905,259.39
Sundry
Accts.
13,597.56
9,346.41
15,365.37
16,787.34
12,260.06
Prepaid
Expenses
34,376.27
42,707.45
70,120.97
47,695.42
170,214.23
Invent-
ories
355,973.04
645,994.32
725,454.27
767,003.80
782,333.22
Total
Current
Assets
$2,640,119.51
$2,572,460.11
$2,875,875.72
$3,038,336.74
$3,136,144.85
Net Fixed
Assets
56,384.04
71,022.85
145,572.64
203,782.58
170,287.32
Total
Assets
$2,696,503.55
$2,643,482.96
$3,021,448.36
$3,242,119.32
$3,273,432.17
Liabili-
ties: Accts. Payable
$ 214,301.21
$ 176,731.65
$ 213,024.19
$ 241,203.46
$ 230,834.53
Accrued Taxes
483,888.52
270,309.80
247,126.70
195,373.54
181,766.45
Other Liabili-
ties
41,929.18
124,667.32
112,666.28
118,730.92
131,774.53
Korrick's Shareholders Ac-
counts Payable
327,942.08
274,957.08
420,138.76
555,877.57
591,102.99
Total Current Liabili-
ties
$1,068,060.99
$ 846,665.85
$ 992,955.93
$1,111,185.49
$1,135,478.50
Reserve
for
Contin-
gencies
160,002.76
185,002.76
210,002.76
210,002.76
210,002.76
Capital Stock
731,000.00
726,000.00
732,000.00
735,000.00
730,000.00
Surplus
737,439.80
885,814.35
1,086,489.67
1,185,931.07
1,197,950.91
Total Liabili-
ties
$2,696,503.55
$2,643,482.96
$3,021,448.36
$3,242,119.32
$3,273,432.17
*332 Petitioner's investment in accounts receivable, inventories, and net depreciable assets increased substantially as follows: Net
January
Accounts
Depreciable
31
Receivable
Inventories
Assets
1946
$191,450.14
$355,973.04
$ 54,838.02
1947
365,619.36
645,994.32
71,022.85
1948
625,315.69
725,454.27
145,572.64
1949
727,317.03
767,003.80
203,782.58
1950
905,259.39
782,333.22
170,287.32 In this connection, it should be noted that on January 31, 1950, petitioner's investment in net depreciable assets was $170,287.32, or an apparent decrease of $33,495.26 from the prior year. In fact, petitioner made substantial additional investments in physical assets during that period. However, as they represented work in progress they were not set up in the depreciable assets accounts but were carried in the "Assets" side of the balance sheet as "Prepaid Expense - Fixtures" in the amount of $122,049.03. Accordingly, there was really a net increase in such properties of $88,553.77 during the fiscal year 1950, instead of an apparent decrease of $33,495.26. The average turnover ratio of inventory for each fiscal year ended January 31, 1946 to 1950, *333 was as follows: Year
Turnover Ratio [1]
1946
6.58
1947
5.43
1948
4.89
1949
4.58
1950
4.56
Most of the accounts receivable were 30 day accounts. Petitioner estimated that it required a cash balance of $400,000 for operating expenses. The operating expenses for the years in question were: Year Ended
January 31
Operating Expenses
1947
$1,217.685.05
1948
1,401.317.32
1949
1,681,237.47
The following table shows petitioner's investment in cash and common stocks, corporation bonds, and United States Government securities: Year
Ended
January
Securities
31
Cash
Cost
Market Value
1944
$458,208.10
$ 882,201.74
$ 868,925.96
1945
609,289.34
1,117,840.58
1,127,005.79
1946
614,054.05
1,270,280.84
1,312,859.54
1947
268,161.99
1,198,853.30
1,249,340.13
1948
189,727.52
1,125,582.46
1,149,840.97
1949
252,735.34
1,113,280.33
1,136,582.88
1950
109,925.61
1,106,596.09
1,150,729.26 Most of the investment in securities was invested in United States Government bonds. Less than ten per *334 cent was invested in the common stocks of other corporations. The interest and dividend income from stocks and bonds owned by petitioner during the taxable periods involved was as follows: Year Ended
Interest and
January 31
Dividend Income
1947
$29,440.37
1948
32,891.16
1949
35,750.81
Petitioner had made loans to and from its stockholders, their families, and investment companies. These accounts payable and receivable were all due on demand and carried interest at six per cent. The balances on these accounts receivable and accounts payable on petitioner's books between 1944 and 1950, were as follows: Account
Account
Receivable
Payable
Debtor-Creditor
January 31
(Asset)
(Liability)
Abe Korrick
1944
$ 42,393.53
1945
63,046.74
1946
75,682.69
1947
41,305.42
1948
31,367.63
1949
28,412.52
Alma Korrick (Wife of Abe Korrick)
1944
1,836.23
1945
1,947.10
1946
2,063.93
1947
2,013.93
1948
47.19
1949
$ 54.48
Charles Korrick
1 44
15,783.08
1945
23,995.31
1946
12,686.20
1947
31,327.42
1948
93,080.52
1949
74,807.86
1950
95,721.20
Charles Korrick and Brother[2]
1944
149,559.67
1945
102,654.89
1946
88,766.00
1947
6,910.85
1948
73,416.95
1949
149,572.86
1950
33,322.49
Charles Korrick Realty Investment Co. [2]
1946
21,540.36
1947
14,503.93
Charles Korrick and Lerner [2]
1948
24,516.42
1949
26,747.12
Korrick Investment Company
Dec. 31, 1944
54,615.95
Dec. 31, 1945
85,394.10
Dec. 31, 1946
112,509.26
Dec. 31, 1947
137,965.15
Dec. 31, 1948
190,306.99
Dec. 31, 1949
252,946.67
Dec. 31, 1950
282,357.38
*335 The balance sheet of petitioner also shows, in addition to the items above, a note payable to Abe Korrick in the amount of $125,000 through the period January 31, 1944 to January 31, 1949. This note was increased to $179,701.92 during the taxable year ended January 31, 1950. Petitioner's net accounts payable and receivable arising from loans to and from its stockholders outlined in detail above are the following for each year: Total
Total
Net
Accounts
Accounts
Accounts
January
Payable
Receivable
Payable
31
(Liability)
(Asset)
(Liability)
1944
$239,628.79
$149,559.67
$ 90,069.12
1945
299,383.25
102,654.89
196,728.36
1946
327,942.08
110,306.36
217,635.72
1947
274,957.08
21,414.78
253,542.30
1948
420,138.76
117,596.94
302,541.82
1949
555,877.57
101,554.98
454,322.59
1950
591,102.99
0.00
591,102.99
*336 After completion of the Roosevelt Dam in 1911, Phoenix began to grow. The store kept on growing with the town and in order to retain its position of leadership it has been necessary to expand the store facilities. The population of the State of Arizona grew from 500,000 in 1940 to 750,000 in 1950. The population of Phoenix was 63,000 in 1940, 90,000 in 1946, and 105,000 in 1950. The population of the Phoenix metropolitan area was 110,000 in 1940, 190,000 in 1946, and 235,000 in 1950. During World War II, the business of petitioner grew very rapidly and it increased substantially after the war ended, the total sales during this period being as follows: Fiscal Year Ended
Total Sales
January 31
(cents omitted)
1941
$1,867,927
1942
2,245,732
1943
2,895,353
1944
3,784,436
1945
4,350,007
1946
4,935,471
1947
5,570,890
1948
5,842,158
1949
6,347,079
1950
6,247,572
During the war, merchandise was scarce and easy to sell so that it was not necessary or possible to carry large inventories, while accounts receivable were relatively low because of credit restrictions and because people had lots of money. The officers of petitioner anticipated that as soon *337 as the war was over merchandise would be easy to obtain and that inventories and accounts receivable would be greatly increased. This anticipation was realized in fact during the taxable years as shown by our findings hereinbefore made of the amount of accounts receivable and the amount of merchandise inventories for the taxable years here in question. During World War II, the officers of petitioner began to think again of expansion of the physical facilities of the store to take care of the growing business. In order to provide funds to finance the expansion of inventories, accounts receivable and equipment, petitioner built up a securities account consisting principally of government bonds. Under the terms of the lease, the Korrick Investment Company would finance the construction of the building. The initial plans for expansion called for construction of two additional floors. However, when petitioner's competitors, the May Company and Goldwaters, announced plans to build stores outside the downtown area, petitioners' management considered an alternative plan of a suburban branch store. Petitioner estimated that it would have to expend more than $1,000,000 as its share of the *338 expansion program which it planned, including the following: Escalators
$350,000
Freight elevator
30,000
Passenger elevator
$ 35,000 to
40,000
Additional inventory
300,000
Additional fixtures
150,000 to
225,000
Refixturing on old floors
150,000 to
75,000
Additional accounts receiv-
able
150,000 to
200,000
Petitioner's failure to carry out the planned expansion of establishing a suburban branch store or, in the alternative, of having Korrick Investment Company to add two stories to the old store building during the years in question was due to several reasons: It was necessary to use large amounts of the accumulated funds for additional operating assets in the old store so that petitioner did not have sufficient capital to finance the program without substantial outside borrowing; building construction conditions were chaotic so that it was difficult to determine in advance what the costs would be or to obtain a firm price contract, and it was believed that prices might come down; and there was some question whether it would be better to add two floors to the old building or to start a new suburban branch store. Petitioner was an operating *339 department store, and not a mere holding or investment company. The gains and profits of the petitioner for the fiscal years ended January 31, 1947, 1948, and 1949, were not permitted to accumulate beyond the reasonable needs of the business. The petitioner was not formed or availed of during these years for the purpose of preventing the imposition of the surtax upon its shareholders or the shareholders of any other corporation through the medium of permitting its earnings or profits to accumulate instead of being divided or distributed. At the hearing the following stipulation was read into the record: "It is stipulated by the Respondent that if the Court sustains the determination of the Commissioner, the Petitioner is entitled to a deduction in the amount of $38,985.78, in determining the Section 102 net income for the taxable year ended January 31, 1947. This amount represents federal income and excess profits taxes for prior taxable years, which were paid in the taxable period ended January 31, 1947." Opinion BLACK, Judge: The question raised here is whether petitioner is subject to surtax under section 102 of the Internal Revenue Code for the *340 fiscal years ended January 31, 1947, 1948, and 1949. Respondent determined that petitioner was formed or availed of during those years for the purpose of preventing the imposition of surtax on its stockholders by accumulating earnings or profits beyond the reasonable needs of the business instead of distributing them. The applicable provisions of the statute are printed in the margin. [3]
*341 It is clear petitioner is an active successful department store and is not a "mere holding or investment company" under section 102 (b). By virtue of section 102 (c), the accumulation of earnings or profits beyond reasonable needs is determinative of a purpose to prevent the imposition of the surtax upon the shareholders, unless the corporation by a clear preponderance of evidence proves to the contrary. See Whitney Chain & Mfg. Co., 3 T.C. 1109, affd. 149 Fed. (2d) 936. The questions thus raised are fact questions to be determined from all the evidence. Helvering v. Chicago Stock Yards Co., 318 U.S. 693; Lion Clothing Co., 8 T.C. 1181, 1189. We think petitioner has met its burden of proof here, and we have found as an ultimate fact that petitioner did not accumulate earnings or profits beyond the reasonable needs of its business during the years ended January 31, 1947, 1948, and 1949, the taxable years in question. Petitioner's department store was situated in a rapidly growing city and metropolitan area and was put to the necessity of expanding its business to meet the growing demands from its customers. Its sales increased *342 from about $1,800,000 in 1941 to about $6,200,000 in 1950. An earlier experience of serious financial difficulty had made a deep impression upon the executives. The policy of petitioner for many years was to accumulate part of its net profits for expansion of its ever growing business in order to avoid bank loans. The expansion required increased investments in merchandise inventories, accounts receivable, and furniture and fixtures, which had taken place, in fact, during the taxable years. Petitioner's two major stockholders each received substantial dividends and salaries totaling for each stockholder $96,538.85, $88,798.85, and $120,884.56 in the taxable years ended January 31, 1947, 1948, and 1949, respectively. The general aspects of the present case are similar to Lion Clothing Co., supra, and J. L. Goodman Furniture Co., 11 T.C. 530. This is no proceeding where the taxpayer has made a practice of paying little or no dividends to stockholders over the years and adding most of its earnings to accumulated surplus. On the contrary, the record in the instant case shows that petitioner has consistently paid substantial dividends. During the 7 years set *343 forth on joint Exhibit 4-D, beginning with 1944 and running through 1950, petitioner paid out $848,960 in dividends while retaining only $670,052.04 of its earnings after payment of taxes. While detailed figures are not in the record for years prior to January 31, 1944, both Charles Korrick and Abe Korrick testified that petitioner had paid dividends during each and every year of its existence with the possible exception of one or two years during the depression. When all the facts established in this proceeding are taken into consideration, we think they are sufficient to show that in none of the taxable years did petitioner accumulate its earnings beyond the reasonable needs of the business. In the fiscal year ended January 31, 1947, which is the first taxable year we have before us, petitioner's net profits before taxes were $545,431.40; of this amount it paid $208,458.55 taxes to the Federal Government, distributed $145,200 in dividends to its stockholders, and retained earnings of $191,772.85. In its fiscal year ended January 31, 1948, petitioner's net profits before taxes were $517,172.79; of this amount it paid $199,508.22 taxes to the Federal Government, distributed $128,100 *344 in dividends to its stockholders, and retained earnings of $189,564.57. In its fiscal year ended January 31, 1949, petitioner's net profits before taxes were $400,400.76; of this amount it paid $142,656.14 taxes to the Federal Government, distributed $165,225 dividends to stockholders, and retained earnings of $92,519.62. Thus we see from the foregoing facts that while petitioner in the taxable years before us had large earnings, it paid large taxes to the Federal Government, disbursed very substantial cash dividends to its stockholders, and added substantial amounts to its earned surplus. In the light of the facts recited in our Findings of Fact, we think the additions which petitioner made in each of the taxable years to its earned surplus were reasonable in amount and were accumulated to meet the legitimate needs of the business and not to prevent the imposition of the surtax on its stockholders. See Lion Clothing Co., supra. Respondent in his brief emphasizes the fact that the stockholders of petitioner, directly and indirectly, had accounts with petitioner during the taxable years, including the account of Korrick Investment Company. At no time during the period *345 here in question did Korrick Investment Company owe any money to petitioner and the indebtedness to it by petitioner increased from $112,000 on January 31, 1946 to $282,357 on January 31, 1950. Furthermore, the net amounts due to Abe Korrick, Charles Korrick, and their partnerships increased from $105,126 on January 31, 1946 to $308,745 on January 31, 1950. Details of these accounts are shown in our Findings of Fact. The important fact in our opinion is that on net balance the petitioner owed considerable sums in each and every year to its stockholders and their related interests. In other words, petitioner owed its stockholders and their related interests a good deal more than they owed petitioner. See Cecil B. de Mille, 31 B.T.A. 1161; Lion Clothing Co., supra.
Respondent also emphasizes in his brief the fact that petitioner included among its assets over $1,100,000 in securities. These securities have been considered the equivalent of cash in our analysis of the question we have before us, but the large holding of securities does not result in a finding of unreasonable accumulation if there is a reasonable business need for such reserve. Dill Manufacturing Co., 39 B.T.A. 1023, 1032; *346 Crawford County Printing & Publishing Co., 17 T.C. 1404. The expansion program contemplated by petitioner was actually carried out during the period here in question as far as could be done within the physical limitations of the old department store. During the three taxable years in question and also by projection into the next year, the increases in inventories, accounts receivable, and depreciable assets were as follows: Three Taxable
Four Years
Years
From
February
February
1, 1946
1, 1946
to January
to January
Increases in
31, 1949
31, 1950
Inventories
$ 411,030.76
$ 436,360.58
Accounts Receivable
535,866.89
713,809.25
Depreciable Assets
148,944.56
237,498.33
Total Increases
$1,095,842.21
$1,387,668.16
Respondent contends that petitioner's expansion program was too vague and indefinite to receive serious consideration in a 102 case. We cannot agree with respondent. There were numerous witnesses, including impartial third parties, who testified as to the various aspects of the need for physical expansion and the petitioner's plan to achieve it. Petitioner has explained satisfactorily that the proposed expansion *347 in space facilities has not taken place yet because of insufficient capital, reluctance to borrow, the high unpredictable building costs, and the question of expanding the present building or building a suburban branch store. The expansion plan was definite, necessary, and not abandoned during the taxable years. J. L. Goodman Furniture Co., supra; General Smelting Co., 4 T.C. 313; L. R. Teeple Co., 47 B.T.A. 270. The construction costs of the external physical facilities would be financed by Korrick Investment Company, petitioner's lessor. Petitioner's estimate of its part of the costs of this expansion program totaled over $1,000,000 for depreciable assets, accounts receivable, and inventories, the details being presented in the Findings of Fact. These estimates seem to us reasonable and conservative and as a matter of fact, have already been largely borne out, as pointed out above, even before any increase in petitioner's physical plant has occurred. Taking into consideration all the facts, including the expansion which actually took place and conservative estimates for the proposed physical expansion as well as cash operating balances *348 which are needed in the business, we hold that the accumulations of earnings or profits in issue here were to meet the legitimate reasonable needs of petitioner's business. We hold that respondent erred in determining that the surtax under the provisions of section 102 of the Code should be imposed upon petitioner's net income for each of the taxable years ended January 31, 1947, 1948, and 1949. In view of the decision on the main issue holding that section 102 is not applicable here, it is no longer necessary to consider the second issue relating to respondent's computation under section 102. Decisions will be entered under Rule 50. Footnotes
1. Turnover ratio is the total cost of sales for the year divided by the average inventory for the year.↩
2. Charles Korrick and Brother was a partnership between Charles and Abe Korrick for the purpose of buying and selling ranches, real estate, and rental properties. Charles Korrick Realty Investment Company was a sole proprietorship of Charles Korrick engaged in buying and selling real estate. Charles Korrick and Lerner was a partnership engaged in buying and selling real estate.↩
3. SEC. 102. SURTAX ON CORPORATIONS IMPROPERLY ACCUMULATING SURPLUS. (a) Imposition of Tax. - There shall be levied, collected, and paid for each taxable year (in addition to other taxes imposed by this chapter) upon the net income of every corporation (other than a personal holding company as defined in section 501 or a foreign personal holding company as defined in Supplement P) if such corporation, however created or organized, is formed or availed of for the purpose of preventing the imposition of the surtax upon its shareholders or the shareholders of any other corporation, through the medium of permitting earnings or profits to accumulate instead of being divided or distributed, a surtax equal to the sum of the following: * * *
(b) Prima Facie Evidence. - The fact that any corporation is a mere holding or investment company shall be prima facie evidence of a purpose to avoid surtax upon shareholders. (c) Evidence Determinative of Purpose. - The fact that the earnings or profits of a corporation are permitted to accumulate beyond the reasonable needs of the business shall be determinative of the purpose to avoid surtax upon shareholders unless the corporation by the clear preponderance of the evidence shall prove to the contrary.↩